# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP002006-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Appellant-Petitioner, |
| | v. |
| | John Patrick Wright, |
| | Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 383 Wis. 2d 602,918 N.W.2d 128
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | April 30, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 16, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Hannah C. Dugan |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *David H. Perlman*, assistant attorney general, with whom on the briefs is *Brad D. Schimel*, attorney general. There was an oral argument by *David H. Perlman*.

For the defendant-respondent, there was a brief filed by *Carly M. Cusack*, assistant state public defender. There was an oral argument by *Carly M. Cusack*.

**2019 WI 45**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP2006-CR
(L.C. No. 2016CM2845)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Appellant-Petitioner,

  v.

John Patrick Wright,

    Defendant-Respondent.

**FILED**

**APR 30, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals affirming an order of the Circuit Court for Milwaukee County, Hannah Dugan, Judge, granting John Patrick Wright's motion to suppress evidence.[1] The

---

[1] State v. Wright, No. 2017AP2006-CR, unpublished slip op. (Wis. Ct. App. June 12, 2018).

appeal was decided by one judge, Joan F. Kessler, pursuant to Wis. Stat. § 752.31(2)(f) (2015-16).[2]

¶2 John Patrick Wright, the defendant, was charged with unlawfully carrying a concealed weapon in violation of Wis. Stat. § 941.23(2). The weapon was discovered in Wright's vehicle's glove compartment during a traffic stop. Wright did not hold a valid permit to carry a concealed weapon, commonly referred to as a CCW permit.

¶3 Wright filed a motion to suppress the evidence. Wright admitted that the traffic stop was lawfully initiated because it was supported by reasonable suspicion that Wright was violating the traffic code.

¶4 Wright argued, however, that the police violated the Fourth Amendment by taking three actions unsupported by reasonable suspicion of criminal activity: (1) the police asked Wright whether he had a weapon in the vehicle; (2) the police asked Wright whether he held a permit to carry a concealed weapon; and (3) the police verified whether Wright in fact had a valid CCW permit (a CCW permit check).

¶5 The circuit court, relying on Rodriguez v. United States, 135 S. Ct. 1609 (2015), held that the officer unlawfully extended the traffic stop by asking Wright whether he had a weapon in the vehicle and whether he held a permit to carry a

---

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

concealed weapon. The court of appeals affirmed, adopting the same reasoning as the circuit court.

¶6 The case presents three Fourth Amendment issues: (1) in the absence of reasonable suspicion of criminal activity, may an officer ask a lawfully stopped motorist about the presence of weapons; (2) in the absence of reasonable suspicion of criminal activity, may an officer ask a lawfully stopped motorist whether the motorist holds a CCW permit; and (3) in the absence of reasonable suspicion of criminal activity, may an officer conduct a CCW permit check.

¶7 We conclude that, in the instant case, none of the officer's questions or actions violated the Fourth Amendment.

¶8 A traffic stop constitutes a seizure for Fourth Amendment purposes.[3] The United States Supreme Court has described a routine traffic stop as more akin to a Terry[4] stop than a formal arrest. It has held that, like a Terry stop, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'——to address the traffic violation that warranted the stop and attend to related safety concerns."[5]

---

[3] Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015); State v. Floyd, 2017 WI 78, ¶20, 377 Wis. 2d 394, 898 N.W.2d 560.

[4] Terry v. Ohio, 392 U.S. 1 (1968).

[5] Rodriguez, 135 S. Ct. at 1614 (citations omitted); see also Arizona v. Johnson, 555 U.S. 323, 330 (2009); Illinois v. Caballes, 543 U.S. 405, 407 (2005); Knowles v. Iowa, 525 U.S. 113, 117 (1998).

¶9 The "mission" of a traffic stop includes: (1) addressing the traffic violation that warranted the stop; (2) conducting ordinary inquiries incident to the stop; and (3) taking negligibly burdensome precautions to ensure officer safety.[6] Authority for the seizure ends when these tasks are, or reasonably should have been, completed.[7]

¶10 This is not to say, however, that police action unrelated to the traffic stop's mission necessarily violates the Fourth Amendment. To the contrary, the Supreme Court has recognized "that the Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention."[8] In other words, "[t]he seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'"[9]

¶11 We conclude that Wright's Fourth Amendment rights were not violated when the officer asked Wright about the presence of weapons in the vehicle. As this court stated in State v. Floyd, 2017 WI 78, ¶28 377 Wis. 2d 394, 898 N.W.2d 560, questioning a

---

[6] Rodriguez, 135 S. Ct. at 1614-15; Caballes, 543 U.S. at 408.

[7] Rodriguez, 135 S. Ct. at 1614; see also United States v. Sharpe, 470 U.S. 675, 686 (1985) (in determining the reasonable duration of a stop, "it is appropriate to examine whether the police diligently pursued [the] investigation").

[8] Rodriguez, 135 S. Ct. at 1614; see also Johnson, 555 U.S. at 327-28; Caballes, 543 U.S. at 406-08.

[9] Rodriguez, 135 S. Ct. at 1615 (brackets in original) (quoting Johnson, 555 U.S. at 333).

4

lawfully stopped motorist about the presence of weapons relates to officer safety and is negligibly burdensome. The question is part of the traffic stop's mission.[10]

¶12 Neither the officer's question nor the subsequent CCW permit check "measurably extend[ed] the duration of the [traffic] stop."[11] Thus, neither the officer's questioning whether Wright held a CCW permit, nor the officer's subsequent CCW permit check, violated the Fourth Amendment.

¶13 Accordingly, we reverse the decision of the court of appeals, vacate the circuit court's order granting Wright's motion to suppress, and remand the cause to the circuit court for further proceedings.

I

¶14 The following facts are taken from the transcript of the evidentiary hearing on Wright's motion to suppress, as well as the transcript of the circuit court's oral decision granting Wright's motion.

¶15 On June 15, 2016, Milwaukee Police Officers Jesus Gloria and Kristopher Sardina stopped Wright's car because the passenger-side headlight was out.

¶16 While Officer Gloria approached the passenger-side window of Wright's vehicle, Officer Sardina approached the driver's-side window and made contact with Wright. Officer

---

[10] Floyd, 377 Wis. 2d 394, ¶28.

[11] Johnson, 555 U.S. at 333.

5

Sardina asked Wright for his driver's license, asked whether he was a CCW permit holder, and asked whether Wright had any weapons in the car. Officer Sardina testified on cross-examination that although he does not recall how many questions he asked or the order in which he asked them, all of these questions usually "come pretty fast" after he makes initial contact with a motorist.

¶17 Wright responded to the officer that he had just finished the CCW permit class and that he did have a firearm in his vehicle.[12] Officer Sardina asked Wright if the officers had his permission to remove the firearm from the vehicle for the duration of the stop. Wright consented, stating that the firearm was in the glove compartment; Officer Gloria retrieved the firearm.[13]

¶18 Officer Sardina took Wright's license and went back to the squad car to "run [Wright's] information."[14] During this

---

[12] At this point, Officer Sardina arguably had reasonable suspicion that Wright was violating Wis. Stat. § 941.23(2). The State, however, does not argue that reasonable suspicion existed. We therefore do not resolve the issues in the instant case on that basis.

[13] The firearm was loaded.

[14] We infer that Officer Sardina was checking Wright's driver's license and/or determining whether Wright had any outstanding warrants. See Rodriguez, 135 S. Ct. at 1615 (quoting Caballes, 543 U.S. at 408) (explaining that the "ordinary inquiries" incident to the traffic stop include "checking the driver's license [and] determining whether there are outstanding warrants against the driver").

time, Officer Sardina also ran a CCW permit check to see if Wright was a valid CCW permit holder. Officer Sardina discovered that Wright did not have a valid CCW permit. Officer Sardina then arrested Wright under suspicion of unlawfully carrying a concealed weapon. Wright was later charged with unlawfully carrying a concealed weapon in violation of Wis. Stat. § 941.23(2).

¶19 Wright moved to suppress the gun evidence, and, after an evidentiary hearing, the circuit court granted Wright's motion. The circuit court concluded, relying on Rodriguez, that asking the CCW permit question and the question about the presence of weapons unlawfully extended the traffic stop in violation of the Fourth Amendment.

¶20 The State appealed, and the court of appeals affirmed. The court of appeals, relying on Rodriguez, concluded that asking the CCW permit question and the question about the presence of weapons unlawfully extended the traffic stop. Although the State briefed the application of this court's decision in State v. Floyd, 2017 WI 78, ¶28, 377 Wis. 2d 394, 898 N.W.2d 560, a decision that was released after the circuit court's decision but before the court of appeals' decision, the court of appeals failed to address Floyd.

¶21 The State petitioned this court for review.

II

¶22 Whether evidence should be suppressed is a question of constitutional fact.[15]  When presented with a question of constitutional fact, this court engages in a two-step inquiry. "First, we review the circuit court's findings of historical fact under the clearly erroneous standard.  Second, we independently apply constitutional principles to these historical facts."[16]

III

¶23 The Fourth Amendment to the United States Constitution prohibits unreasonable seizures.[17]  A traffic stop constitutes a seizure for constitutional purposes, and "[a] seizure for a traffic violation justifies a police investigation into that violation."[18]  The United States Supreme Court has characterized a routine traffic stop as more akin to a Terry stop than to a

---

[15] State v. Reed, 2018 WI 109, ¶51, 384 Wis. 2d 469, 920 Wis. 2d 56; State v. Johnson, 2007 WI 32, ¶13, 299 Wis. 2d 675, 729 N.W.2d 182; State v. Knapp, 2005 WI 127, ¶19, 285 Wis. 2d 86, 700 N.W.2d 899.

[16] Reed, 384 Wis. 2d 469, ¶51 (footnotes omitted); Johnson, 299 Wis. 2d 675, ¶13; Knapp, 285 Wis. 2d 86, ¶19.

[17] U.S. Const. amend. IV.

Wright also argues that his rights under Article 1, Section 11 of the Wisconsin Constitution were violated.  However, Wright's only developed argument pertains to the Fourth Amendment.  See State v. Grandberry, 2018 WI 29, ¶30 n.19, 380 Wis. 2d 541, 910 N.W.2d 214 (explaining that we typically do not address undeveloped arguments).  Thus, we confine our analysis to the Fourth Amendment of the United States Constitution.

[18] Rodriguez, 135 S. Ct. at 1614.

formal arrest. It has held that, like a Terry stop, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'——to address the traffic violation that warranted the stop and attend to related safety concerns."[19]

¶24 The "mission" of a traffic stop includes: (1) addressing the traffic violation that warranted the stop; (2) conducting ordinary inquiries incident to the stop;[20] and (3) taking negligibly burdensome precautions to ensure officer safety.[21] Authority for the seizure ends when these tasks are, or reasonably should have been, completed.[22]

¶25 Because traffic stops are "especially fraught with danger to police officers,"[23] the Supreme Court has explained that "an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely."[24] Indeed,

---

[19] Rodriguez, 135 S. Ct. at 1614 (citations omitted) (emphasis added).

[20] "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Rodriguez, 135 S. Ct. at 1615 (quoting Caballes, 543 U.S. at 408).

[21] Rodriguez, 135 S. Ct. at 1614-15; Caballes, 543 U.S. at 408; Delaware v. Prouse, 440 U.S. 648, 658-60 (1979); see also 4 Wayne R. LaFave, Search & Seizure § 9.3(c) (5th ed. 2012).

[22] Rodriguez, 135 S. Ct. at 1614.

[23] Johnson, 555 U.S. at 330 (quoting Michigan v. Long, 463 U.S. 1032 (1983)).

[24] Rodriguez, 135 S. Ct. at 1616.

9

the Supreme Court has stated that the Fourth Amendment categorically authorizes the police to order the driver[25] and all passengers[26] out of the vehicle for the duration of the traffic stop in order to ensure the safety of the officer.

¶26 The police may take these precautions because "the government's officer safety interest stems from the mission of the stop itself."[27] As this court has explained, questions related to officer safety are part of the traffic stop's mission, and therefore, those questions do not cause an extension of the stop.[28]

¶27 Moreover, the Supreme Court has "concluded that the Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention."[29] That is, the seizure remains lawful despite these unrelated inquiries "so

---

[25] Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977).

[26] Maryland v. Wilson, 519 U.S. 408, 411 (1997).

[27] Rodriguez, 135 S. Ct. at 1616.

[28] Floyd, 377 Wis. 2d 394, ¶28 ("[B]ecause the questions related to officer safety and were negligibly burdensome, they were part of the traffic stop's mission, and so did not cause an extension.").

[29] Rodriguez, 135 S. Ct. at 1614; see also Johnson, 555 U.S. at 327-28; Caballes, 543 U.S. at 407-08.

long as those inquiries do not measurably extend the duration of the stop."[30]

¶28 With these principles in mind, we now examine whether the questions posed by Officer Sardina fall under the "mission" of the stop, and if they do not, whether they "measurably extend[ed] the duration of the stop."[31] If they constitute part of the mission of the stop, they will not be considered an extension of that stop. If, however, they are unrelated to the mission of the stop, they will violate the Fourth Amendment if they measurably extended the duration of the stop.

IV

A

¶29 We first address Officer Sardina's question regarding the presence of weapons in Wright's vehicle. We conclude that this question constitutes part of the stop's mission because the question is a negligibly burdensome precaution taken to ensure officer safety.

¶30 In Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977), the Supreme Court created a rare bright-line, categorical rule under the Fourth Amendment: In the interest of officer safety,

---

[30] Johnson, 555 U.S. at 333; see also Rodriguez, 135 S. Ct. at 1615 ("An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop."); Caballes, 543 U.S. at 407 (cautioning that a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of the stop).

[31] Johnson, 555 U.S. at 333.

11

a police officer may order a driver out of his or her vehicle for the duration of the traffic stop. This rule was subsequently expanded in Maryland v. Wilson, 519 U.S. 408, 411 (1997), to include all passengers in the vehicle.

¶31 Asking a lawfully stopped motorist about the presence of weapons is significantly less burdensome than ordering all occupants out of the vehicle for the duration of the stop. If a police officer may, in the interest of officer safety, order all occupants out of the vehicle for the duration of the stop without violating the Fourth Amendment, the officer may take a less burdensome precaution to ensure officer safety.

¶32 The State correctly points out that this court's recent decision in State v. Floyd, 2017 WI 78, ¶28, 377 Wis. 2d 394, 898 N.W.2d 560, supports the conclusion that a police officer may ask about the presence of weapons during a traffic stop without violating the Fourth Amendment.

¶33 In Floyd, "Deputy Ruffalo asked Mr. Floyd if he had any weapons or anything that could harm him. When Mr. Floyd said he didn't, Deputy Ruffalo asked if he could perform a search for his safety."[32] The Floyd court explained that "[b]oth questions specifically related to the officer's safety."[33] The Floyd court concluded that "because the questions related to officer safety and were negligibly burdensome, they were part of

---

[32] Floyd, 377 Wis. 2d 394, ¶28.

[33] Id.

the traffic stop's mission, and so did not cause an extension" of the stop.[34]

¶34  Floyd controls.  Officer Sardina's question to Wright regarding whether Wright was carrying any weapons directly related to officer safety and was negligibly burdensome.  As such, it was part of the traffic stop's mission.  It did not cause an extension of the stop.

B

¶35  We now turn to Officer Sardina's question about the CCW permit and the CCW permit check.

¶36  Neither the question regarding the CCW permit nor the CCW permit check addresses the traffic violation that warranted the stop.[35]  Further, the parties agree, as do we, that the CCW permit question and the CCW permit check are not part of the "ordinary inquiries incident to [the traffic] stop."[36]

¶37  Instead, the parties focus on whether the CCW permit question and the CCW permit check further the interest of

---

[34] Id.

[35] Rodriguez, 135 S. Ct. 1614 (traffic stop's "mission" includes "address[ing] the traffic violation that warranted the stop").

[36] Caballes, 543 U.S. at 408; see also Rodriguez, 135 S. Ct. at 1615 ("Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.  These checks serve the same objectives as enforcement of the traffic code:  ensuring that vehicles on the road are operated safely and responsibly.").

officer safety.[37] On this issue, we agree with Wright. Knowing whether or not an individual has a valid CCW permit does not make the officer any safer than the officer otherwise would have been in the absence of that knowledge. It is the potential presence of a weapon that implicates the safety of the officer, not whether that weapon is being lawfully carried under Wis. Stat. § 941.23. In the absence of reasonable suspicion of criminal activity, asking whether a motorist holds a CCW permit and conducting a CCW permit check constitute an unrelated investigation into whether the motorist is unlawfully carrying a concealed weapon.

¶38 Our conclusion that the CCW permit question and CCW permit check are unrelated to the mission of the stop does not, however, mean that the question and the permit check violated the Fourth Amendment. "[T]he Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention."[38] Inquiries unrelated to the original justification for the stop are permissible under the Fourth Amendment "so long as those inquiries do not measurably extend the duration of the stop."[39]

¶39 To illustrate this principle, it is helpful to compare the facts of Illinois v. Caballes and Rodriguez v. United

_____

[37] Rodriguez, 543 U.S. at 1614 (traffic stop's "mission" includes "safety concerns" related to the stop).

[38] Id.

[39] Johnson, 555 U.S. at 333.

14

States. Both of these cases involved a K-9 dog sniff unrelated to the mission of the traffic stop, but the cases reached different results as to the constitutionality of the dog sniff.

¶40 In Caballes, the Supreme Court concluded that the dog sniff did not violate the Fourth Amendment. The Supreme Court acknowledged that "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."[40] However, the dog sniff at issue in Caballes did not prolong the stop beyond the time reasonably required to complete the mission of the stop. Rather, the dog sniff occurred while the traffic stop's mission was still being completed. That is, while one officer was in the process of writing Caballes a warning ticket, a different officer arrived at the scene and walked his K-9 around Caballes's car. There was no extension of the stop beyond the time reasonably necessary to complete the mission of the stop. The Caballes Court explained:

> In the state-court proceedings, however, the judges carefully reviewed the details of Officer Gillette's conversations with respondent and the precise timing of his radio transmissions to the dispatcher to determine whether he had improperly extended the duration of the stop to enable the dog sniff to occur. We have not recounted those details because we accept the state court's conclusion that the duration of the stop in this case was entirely justified by the

---

[40] Caballes, 543 U.S. at 407.

15

traffic offense and the ordinary inquiries incident to such a stop.[41]

¶41 In <u>Rodriguez</u>, however, the Supreme Court concluded that the dog sniff <u>did</u> violate the Fourth Amendment. The <u>Rodriguez</u> Court reached this conclusion because, unlike the dog sniff at issue in <u>Caballes</u>, the dog sniff in <u>Rodriguez</u> prolonged the stop beyond the time reasonably required to complete the mission of the stop.

¶42 The officer in <u>Rodriguez</u> admitted that by 12:27 a.m. or 12:28 a.m., he finished explaining the warning that he had issued to Rodriguez and returned both Rodriguez's and the passenger's documents.[42] At this point, the "mission" of the traffic stop was complete. However, the officer continued to conduct an investigation into unrelated criminal activity. The officer asked Rodriguez for permission to walk his K-9 around Rodriguez's vehicle.[43] When Rodriguez said no, the officer instructed Rodriguez to turn off the ignition and wait for a second officer to arrive.[44] At around 12:33 a.m., the second officer arrived, the two officers led the K-9 around Rodriguez's vehicle, the dog alerted to the presence of drugs, and the

---

[41] <u>Id.</u> at 408.

[42] <u>Rodriguez</u>, 135 S. Ct. at 1613.

[43] <u>Id.</u>

[44] <u>Id.</u>

16

officer discovered a large bag of methamphetamine in Rodriguez's car.[45]

¶43 The key fact driving the different conclusions in Caballes and Rodriguez is that in Caballes, the dog sniff added no time at all to the traffic stop because it was conducted simultaneously with mission-related activities. In Rodriguez, all mission-related activities had been completed, and thus, the dog sniff unlawfully extended the duration of the stop.

¶44 Accordingly, although we have concluded that the CCW permit question and the CCW permit check were unrelated to the mission of the traffic stop, they are nonetheless permissible under the Fourth Amendment "so long as those inquiries do not measurably extend the duration of the stop."[46]

¶45 In the instant case, there is no evidence that the CCW permit question or the CCW permit check measurably extended the duration of the traffic stop. Although the circuit court record is not richly detailed, the record is sufficient to conclude that the CCW permit question and the CCW permit check in the instant case were conducted while mission-related activities were occurring.

¶46 Although Officer Sardina admitted that he could not recall the order in which he asked his questions when he first approached Wright's vehicle, he testified that all of the

---

[45] Id.

[46] Johnson, 555 U.S. at 333.

17

questions "come pretty fast" after he makes initial contact with a motorist. That is, within a few moments of approaching the vehicle, Officer Sardina asked for Wright's driver's license, asked whether Wright was carrying any weapons, and asked whether Wright had a CCW permit.

¶47 We conclude that Officer Sardina's question about whether Wright held a CCW permit did not "measurably extend the duration of the stop."[47] Obviously, Officer Sardina's CCW permit question took some amount of time to ask. However, we view the time it took Officer Sardina to ask the CCW question as de minimis and virtually incapable of measurement. Thus, the CCW question did not violate the Fourth Amendment in the instant case.

¶48 As for the CCW permit check, Officer Sardina testified that he took Wright's license and returned to his squad car in order to "run [Wright's] information." Officer Sardina testified that, in addition to "run[ning] [Wright's] information[,]" he also ran a CCW permit check.

¶49 We conclude that the CCW permit check in the instant case did not violate the Fourth Amendment because it was conducted concurrently with mission-related activities, namely, running Wright's information. Like the dog sniff in Caballes, it cannot be said that the CCW permit check measurably extended the duration of the stop in violation of the Fourth Amendment.

---

[47] Id.

18

¶50 Because neither the CCW permit question nor the CCW permit check measurably extended the duration of the traffic stop in the instant case, Wright's Fourth Amendment rights were not violated.

¶51 Accordingly, we reverse the decision of the court of appeals, vacate the circuit court's order granting Wright's motion to suppress, and remand the cause to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.