NEUBAUER, C.J.
¶1 *164 Courtney C. Brown appeals *165 from a judgment of conviction for one count of possession with intent to deliver cocaine, in violation of WIS. STAT. § 961.41(1m)(cm)1r. (2017-18),[1] as a repeater. Brown's conviction followed the discovery of cocaine on *892 his person after he was pulled over by a police officer for a noncriminal traffic violation. Brown contends that the circuit court erred in denying his motion to suppress evidence. He argues that the officer lacked reasonable suspicion to continue the detention of Brown during the traffic stop when the officer requested that Brown exit the car and consent to a search of Brown's person after the officer wrote a warning ticket. Brown contends that the requests unlawfully extended the duration of the traffic stop. We disagree and therefore affirm.
BACKGROUND
¶2 The relevant facts were testified to by Officer Christopher Deering of the Fond du Lac Police Department at the hearing on Brown's motion to suppress and are largely undisputed, except as noted. Brown also testified.
¶3 On August 23, 2013, at 2:44 a.m., Deering observed a vehicle coming from a cul-de-sac of closed businesses. Deering ran a check and learned that the vehicle was a rental car. According to Deering, "people that traffic drugs often use rental cars." Deering followed the car and saw that it did not properly stop at a stop sign. He initiated a traffic stop.
¶4 As Brown identified himself, the officer noticed that Brown was not wearing a seat belt. When asked, Brown stated that he was coming from the *166 "Speedway," which was inconsistent with Deering's observation that Brown came from the cul-de-sac. To confirm, Deering asked if Brown was "coming directly from Speedway to here," to which Brown replied in the affirmative. Brown stated that he had been at his girlfriend's house earlier. He knew the intersection by the house, but he did not know the address or her last name. When asked where he was headed, Brown said, "nowhere really, right now." Brown said he was from Milwaukee. Deering testified that Milwaukee is considered a "source city for drugs."
¶5 Deering returned to his car with Brown's driver's license to write a warning for the no seat belt violation. Two other officers arrived in separate vehicles to assist. Both officers stood on the side of Brown's car, but made no contact with Brown at any point. Deering described their roles as "safety officer[s]."
¶6 Deering ran a records check and learned that Brown had many drug arrests and had been convicted of possession with intent to distribute cocaine and armed robbery. Deering inquired as to whether a canine was available to conduct a dog sniff, but was told neither the city nor county had one on duty. Deering completed the written warning.
¶7 Deering returned to Brown's car, opened the door, and asked him to step out. Deering and Brown walked to the officer's car. Deering asked Brown to place his hands behind his back. When asked why he wanted Brown out of the car, Deering explained it "would be an awkward encounter" to search someone by reaching through the window, as Deering had already planned to ask Brown to consent to a search.
¶8 Deering asked Brown if he had anything on him that Deering should know about. Brown said "no." Deering made this inquiry to find out if Brown had *167 "any illegal weapons or drugs on him." When asked if he considered this traffic stop to be "high-risk," Deering testified "no." When asked if he had concerns that Brown had weapons, Deering testified, "He could have [weapons] but there was-I guess, there's no specific factors to lead to that."
¶9 Deering then asked for permission to search Brown. Deering testified that Brown consented; Brown testified that he said "no." Deering searched Brown and *893 found thirteen bags of crack cocaine and approximately $500 in cash. Deering still had Brown's driver's license and the written warning.
¶10 Brown was charged with one count of possession with intent to deliver cocaine. Brown moved to suppress the evidence, asserting he was illegally stopped. After a hearing, the circuit court denied the motion, finding that the traffic stop was lawful. Brown does not appeal this ruling.
¶11 Brown then filed a motion to suppress the evidence on the ground that the officer unlawfully extended the noncriminal traffic stop beyond the initial purpose. He argued once Deering had completed writing the ticket, the stop should have been over, and Deering lacked reasonable suspicion to continue the detention by asking Brown to exit the car and to consent to a search.
¶12 The court denied the motion, finding that the officer had reasonable suspicion to extend the stop to request consent. The court assumed without deciding that Brown gave consent, stating that consent was "a separate issue" "for a different day, with potentially additional witnesses."[2]
*168 ¶13 Brown pled no contest to the sole count, with the enhancer dismissed, and a judgment of conviction for one count of possession with intent to deliver cocaine was entered. Brown was sentenced to two years of initial confinement followed by two years of extended supervision.
¶14 Brown appeals his conviction, challenging the circuit court's order denying his motion to suppress.
STANDARD OF REVIEW
¶15 The constitutionality of a seizure is a question of constitutional fact. State v. Floyd , 2017 WI 78, ¶11, 377 Wis. 2d 394, 898 N.W.2d 560. We uphold a circuit court's findings of historical fact unless clearly erroneous, but whether those facts pass constitutional muster is a question of law we review de novo. Id.
DISCUSSION
¶16 Here, the circuit court found the initial stop to be lawful.[3] Brown does not challenge that determination on appeal. While Brown denied consenting at the motion hearing, the circuit court held the consent issue in abeyance for a further hearing, finding that reasonable suspicion supported the extension and request *169 to search, and denying the motion to suppress. Brown pled to the charge without further pursuing a challenge to the voluntariness of his consent. On appeal, he argues only that the requests to exit the vehicle and to consent to a frisk improperly extended the stop, such that his consent was constitutionally invalid.
¶17 We agree with the State that we need not determine whether reasonable suspicion supported the requests to exit the car and for consent to search during the lawful traffic stop. State v. Wright , 2019 WI 45, 386 Wis. 2d 495, ¶11, 386 Wis. 2d 495, 926 N.W.2d 157, Floyd , 377 Wis. 2d 394, 898 N.W.2d 560, and the United States Supreme Court cases upon which they are based clearly establish that the requests were part of the mission of the traffic stop, and thus were not an extension of the stop.
*894 ¶18 The United States and Wisconsin Constitutions protect the right of individuals to be free from unreasonable searches and seizures. U.S. CONST. amend. IV ; WIS. CONST. art. I, § 11 ; see also Floyd , 377 Wis. 2d 394, ¶19, 898 N.W.2d 560 ("[W]e normally interpret [the Wisconsin counterpart] coextensively with the United States Supreme Court's interpretation of the Fourth Amendment."). A traffic stop is a form of seizure entitled to Fourth Amendment protections from unreasonable search and seizures. Floyd , 377 Wis. 2d 394, ¶20, 898 N.W.2d 560 ; State v. Guzy , 139 Wis. 2d 663, 675, 407 N.W.2d 548 (1987).
¶19 A law enforcement officer may temporarily detain individuals and perform an investigatory stop of a vehicle based on reasonable suspicion of a noncriminal traffic violation. Floyd , 377 Wis. 2d 394, ¶20, 898 N.W.2d 560. The "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'-to address the traffic violation that warranted the stop and *170 attend to related safety concerns." Wright , 386 Wis.2d 495, 926 N.W.2d 157, ¶23 (citation omitted). The purpose of such a stop includes "addressing the traffic violation that warranted the stop," "conducting the ordinary inquiries incident to the stop," and "taking negligibly burdensome precautions to ensure officer safety." Id. , at ¶24 ; State v. Smith , 2018 WI 2, ¶¶10, 15, 379 Wis. 2d 86, 905 N.W.2d 353. "Authority for the seizure ends when these tasks are, or reasonably should have been, completed." Wright , 386 Wis.2d 495, 926 N.W.2d 157, ¶24.
¶20 Deering's request that Brown exit the vehicle was plainly within the stop's mission. "Because traffic stops are 'especially fraught with danger to police officers,' " "an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely," including ordering the driver and passengers out of the car for the duration of the stop. Id. , ¶25 (quoting Arizona v. Johnson , 555 U.S. 323, 330, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) and Rodriguez v. United States , --- U.S. ----, 135 S. Ct. 1609, 1616, 191 L.Ed.2d 492 (2015) ) (officer's safety interest stems from the mission of the stop itself); see also Pennsylvania v. Mimms , 434 U.S. 106, 110-11 & n.6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment[ ]" because the "legitimate and weighty" interest in officer safety outweighs the "de minimis" additional intrusion).
¶21 Deering's asking of Brown if he would consent to a search also fell within the mission of the traffic stop. See Wright , 386 Wis.2d 495, 926 N.W.2d 157, ¶26 (questions related to officer safety are part of the traffic stop's mission). Queries about the possession of weapons and *171 for consent to frisk, if made reasonably and without unnecessary delay, remain within the scope of the original traffic stop mission. Floyd , 377 Wis. 2d 394, ¶28, 898 N.W.2d 560.
¶22 In Floyd , the Wisconsin Supreme Court concluded that asking the driver if he had any weapons and asking for permission to frisk him, which he granted, were part of the original traffic stop mission. Id. The inherent danger of traffic stops makes officer safety "an integral part of every traffic stop's mission" and permits the taking of "negligibly burdensome precautions" by the officer. Id. , ¶¶26-27 (citation omitted). The request to search for weapons did not unlawfully extend the stop. Id. , ¶¶26-28 ; see also Wright , 386 Wis.2d 495, 926 N.W.2d 157, ¶¶32-34 (discussing the officer's request to search for his safety in Floyd ).
*895 ¶23 Before he returned to Brown's vehicle, Deering was aware of Brown's many drug-related arrests and convictions for possession with intent to deliver cocaine and armed robbery. It was 2:44 a.m.; the vehicle was coming from a dead-end road of closed businesses; the vehicle was a rental; Brown falsely claimed that he was coming from a gas station; and he claimed he drove from Milwaukee to Fond du Lac to visit his girlfriend, although he did not know her last name or precise address. While Deering testified that he was focused on a search for both weapons and drugs, it is the objective conduct of the officer we analyze for reasonableness; an officer's subjective intent or hope to uncover unrelated criminal conduct is irrelevant unless it manifests objectively. See Whren v. United States , 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The request to search encompassed a search for both weapons and drugs.
*172 ¶24 The totality of the facts relating to Brown's behavior and his criminal past added to the safety hazard inherent in all traffic stops and thus supported the request for consent to search. See State v. Richardson , 156 Wis. 2d 128, 144, 456 N.W.2d 830 (1990) (drugs and guns often go hand in hand). The request to search was asked shortly after the stop was initiated. Although it was made near the end, the stop was not completed and the request was negligibly burdensome. The request did not constitutionally invalidate Brown's consent.[4] See Floyd , 377 Wis. 2d 394, ¶32, 898 N.W.2d 560 ("Requesting permission to search a person who has been lawfully seized does not invalidate the person's consent."). That Deering was about to complete the stop does not alter our analysis, as risks remained while Deering returned to his vehicle.
CONCLUSION
¶25 The law enforcement officer's request that Brown exit the car and for consent to search did not violate the Fourth Amendment. We therefore uphold the circuit court's order denying Brown's motion to suppress and affirm the judgment.
By the Court. -Judgment affirmed.

All references to the Wisconsin Statutes are to the 2017-18 version.

The Honorable Dale English presided over the case at the time of this hearing.

We note the circuit court also concluded that, before the requests to exit the car and for consent to search, Deering had not returned Brown's license or handed him the written warning. This finding was not clearly erroneous. Although Deering testified that he did not remember whether he handed Brown the license and warning before the requests, he also indicated that he "probably [did] not." Brown testified that he did not receive his license or the warning before the requests.

Although Brown disagrees with the State's characterization of Deering's request for consent as "quick" in that Deering had Brown first exit the vehicle and walk to the police car, Brown does not assert that the length of the stop itself was substantial or unreasonable. Brown does not point to anything in the record, and we see none, indicating that the length of time between Deering's first contact with Brown and the request to consent was anything but short.