# 2019 WI APP 52

## COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2018AP1310-CR

†Petition for Review Filed

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MALCOLM J. SANDERS,

DEFENDANT-APPELLANT.†

| | |
|---|---|
| Opinion Filed: | August 7, 2019 |
| Submitted on Briefs: | April 24, 2019 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Gundrum, J. |
| Concurred: | |
| Dissented: | Reilly, P.J. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Tim Provis*, Port Washington. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Hannah S. Jurss*, assistant attorney general, and *Brad D. Schimel*, attorney general. |

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**August 7, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1310-CR**

Cir. Ct. No. **2016CF677**

STATE OF WISCONSIN

IN COURT OF APPEALS

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MALCOLM J. SANDERS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶1    GUNDRUM, J.   Malcolm Sanders appeals from a judgment of conviction entered after a jury found him guilty of two counts of delivering heroin, as a repeater and as a party to a crime. He claims the Equal Protection Clauses of the United States Constitution and Wisconsin Constitution were violated when the

prosecutor used two of her peremptory challenges to strike from the jury panel the only two African-American potential jurors. Because we agree with the circuit court's determination that the prosecutor did not engage in purposeful discrimination, we conclude there was no equal protection violation. We affirm.

## *Background*

¶2      During voir dire, the circuit court, the prosecutor, and Sanders' counsel asked questions of potential jurors on the panel. When it was her turn, the prosecutor's first question was: "Is there anyone here who has … had a prior bad experience with law enforcement?" Several potential jurors raised their hands. Questioning continued in relevant part:

> [Prosecutor]: …. I'm going to start with … Ms. [R.]
>
> …. [W]hat I'm really asking here is whether … your prior experience with law enforcement would affect your ability to be fair in this case.
>
> MS. [R.]: Yes.
>
> [Prosecutor]: All right. And so does that mean that you would count the testimony of law enforcement officers as less credible than other witnesses, or is there some other way where you think your ability to be fair would be affected?
>
> MS. [R.]: I wouldn't—I have an issue with the police. I have been pulled over for driving in the wrong area, so my perception might be skewed.
>
> [Prosecutor]: Okay. And so when you are evaluating the testimony of law enforcement officers, would you believe their testimony to be less credible simply because they are law enforcement officers?
>
> MS. [R.]: Yes.
>
> [Prosecutor]: And so overall evaluating the evidence in this case knowing that there's likely to be testimony from law enforcement officers, could you be fair?

2

MS. [R.]: Yes.

[Prosecutor]: So in spite of what you told me regarding your concerns, you think overall in this case you could be fair?

MS. [R.]: Yes, but … I just do not feel comfortable with this.

[Prosecutor]: Okay. So you have an issue of comfort. But, again, comfort isn't really the deciding question. The deciding question is whether you can be fair, so you think regardless of your comfort level, in the end could you evaluate the evidence in this case fairly?

MS. [R.]: Yes.

….

[Prosecutor]: All right. How about the second row? Anybody have a prior bad experience with … law enforcement in the second row?...

(Hand is raised.)

[Prosecutor]: Mr. [O.]?

….

[Prosecutor]: Okay. So, again, … given your prior experience, do you think you can be fair in this case?

MR. [O.]: No.

[Prosecutor]: All right. And you heard the questions that I was asking Ms. [R.] Again, the overall question in this case is regarding evaluating the evidence, evaluating the testimony, which may include law enforcement. And so based upon that, do you think you can evaluate the evidence in a fair way?

MR. [O.]: Honestly, no.

[Prosecutor]: Okay. I would move to strike Mr. [O.] based upon those answers.

[Court]: I am going to pry a little bit. Why do you think you would be unable to be fair to both sides?

MR. [O.]: Personal reasons.

3

[Court]: Well, … don't you think other people on the jury may have personal reasons that would affect their decision? [Court discussion about "justice" being "always blind and always in balance."] …. [I]s there some reason you would be unable to [decide based upon what the facts dictate]?

MR. [O.]: Yes. I'm sorry. It is just personal reasons.

[Court]: I'm afraid I'm going to have to pry a little bit more, sir.

MR. [O.]: I had a run-in when I was 16 with a cop.

….

MR. [O.]: And he threatened to beat my head in.

[Court]: Okay. Do you think all the police are like that?

MR. [O.]: I just—I don't know. I just don't trust them.

[Court]: [Discussion about being open-minded and jury duty "bring[ing] people together from all backgrounds."]

I don't think you would suggest we have only jurors consisting of people who have had good experiences with the police, do you?

MR. [O.]: No.

[Court]: So if I let you off because you had one bad experience with one bad police officer, what is going on? I'm going to repeat my question, and answer it honestly, and I'm not going to continue to examine you about it, but is there any reason for me to think you are any less likely to be fair to both sides than anyone else who is here?

MR. [O.]: Possibly. I'm just stuck in my ways right now.

[Court]: I'm going to let the lawyers examine you further. I'm going to deny your request, but you can examine further on it if you want.

[Prosecutor]: Okay. I think you have answered sufficient questions. So now is there anyone else in the second row who I missed who has had a bad experience with law enforcement?

(Hand is raised.)

4

[Prosecutor]: Mr. [S.]?

MR. [S.]: Mm-mmm.

[Prosecutor]: And, again, I'm not going to try to pry into details, but the question in the end … is whether you can listen to the evidence and evaluate it fairly.

MR. [S.]: Honestly, I'm not sure. I would say I don't know, but based on my experience in the past, it probably would bubble up feelings of stuff that has happened to me in the past several times, and just to give a little detail, just being racially profiled in the past, and I don't know how that would come up in this case, but I have had it happen to me several times where I have just been pulled over without just cause.

[Prosecutor]: Okay. So, again, you heard the judge talk about people's prior experiences, and the question I want to ask you now is whether you think that you are less able to be fair than anyone else on the jury.

MR. [S.]: Right now I don't think so. I mean, I'm saying I think I can be fair, but I'm just letting you know, you know, that has happened to me, and like I said, I don't know how that is going to come into this case as far as a reason for someone being pulled over or questioned or whatever the case may be, but I'm letting you know that is what happened to me in my past.

….

[Court]: Let me ask both of you gentlemen if the evidence satisfies you beyond a reasonable doubt that the defendant committed the crimes charged or either of the crimes charged, would you be able to vote guilty?

MR. [S.]: I would say yes.

[Court]: Would you be able to vote not guilty if the evidence did not come up to that standard?

MR. [S.]: Yes.

[Court]: Mr. [O.], how do you answer?

MR. [O.]: The second question, yes.

[Court]: What about the first question? If the evidence satisfies you beyond a reasonable doubt that the defendant

5

committed one or both of the crimes, would you be able to return a verdict of guilty?

MR. [O.]: Possibly.

[Court]: Well, this one I've got to have an answer.

MR. [O.]: Yes or no?

[Court]: Yes, sir.

MR. [O.]: Yes.

….

[Prosecutor]: …. Now, as the judge has informed you, this case does involve allegations of delivery of drugs, so I'm going to ask a question about your personal experiences. Have you or someone close to you like a close family member or friend ever been arrested for a drug crime?

(Hands are raised.)

….

[Prosecutor]: Okay. I'll start in the back with Ms. [R.] And, again, my question in the end, what I'm trying to determine, is whether that past experience, whether involving yourself or a close family member or friend, would cause you to be unfair in this case knowing that this case involves a drug allegation?

MS. [R.]: My husband did time in prison for selling drugs.

[Prosecutor]: Okay. And do you feel that in your husband's case, he was treated fairly or unfairly?

MS. [R.]: He was treated fairly.

[Prosecutor]: And was that some time ago, or was it recent?

MS. [R.]: Eight years ago.

[Prosecutor]: All right. So given that experience, could you be fair in this case?

MS. [R.]: Yes.

6

[Prosecutor]: Thank you. Is there anyone else in the back row, whether you, yourself, or a very close family member or friend who has been arrested for a drug crime?

(No response.)

[Prosecutor]: .... How about the second row here?

(Hands are raised.)

….

[Prosecutor]: So [Ms. S.] can you just give me a brief description of the circumstances?

MS. [S.]: My son, and it was possession.

[Prosecutor]: Okay. Do you feel your son was treated fairly or unfairly?

MS. [S.]: Unfairly.

[Prosecutor]: And was this a long time ago, or was this more recent?

MS. [S.]: Within the last couple of years.

[Prosecutor]: Okay. Now, given your personal experience with your son, do you think you would be able to be fair in this case?

MS. [S.]: Yes.

….

[Prosecutor]: .… Has anyone here, you, yourself personally, been charged with any crime?

(Hands are raised.)

[Prosecutor]: .… Mr. [G.] And so what were the circumstances of that?

MR. [G.]: I was young. It was like 35 years ago. I was in the Marines, and somebody hit me and I hit him back ….

….

MR. [G.]: .… It was like a really long time ago. It is the only time I have ever been arrested. He hit me and I hit him, and the charge was dropped ….

7

[Prosecutor]:  I appreciate the answer.

MR. [G.]:  I have to admit it, I have been arrested.

[Prosecutor]:  So would that affect your ability to be fair?...

MR. [G.]:  Not at all.

[Prosecutor]:  Okay.  Thank you.  Anyone else who I missed who you, yourself, have been charged with a crime?

(No response.)

[Prosecutor]:  I see no other hands.  All right.…  Is there anyone here who thinks that really drugs should be legalized, illegal drugs currently like marijuana or cocaine or heroin, that that should become legal?

….

[Prosecutor]:  ....  Mr. [F.]  So my follow-up question is regardless of your personal opinion, would you be able to follow the judge's instructions regarding the law in this case?

MR. [F.]:  Yes, absolutely.

….

[Prosecutor]:  .…  [I]s anyone familiar with the difference between circumstantial evidence and direct evidence?  Anyone here who hasn't heard that distinction here before, something circumstantial versus something direct?

(No response.)

[Prosecutor]:  I see no hands.  Is there anyone here who thinks that circumstantial evidence is always going to be [not as probative or as valuable as] direct evidence?...

….

[Prosecutor]:  I see a few hands there.  Now, what if the circumstantial evidence was something like a fingerprint that connects someone to a burglary?  Would that necessarily be worse evidence than an eyewitness?…

(Hand is raised.)

8

[Prosecutor]: And that is Mr. [M.]? All right. So in the end, the question that I'm getting to is whether you wi[ll] fairly evaluate the evidence in this case, whether it is circumstantial or direct.

MR. [M.]: I could, but if there was proof of prints, I mean, that sums it up.

[Prosecutor]: Okay. So you think that kind of … evidence could be quite strong?

MR. [M.]: Very strong, yes.

¶3 No other potential jurors responded to any voir dire questions, by either the circuit court, the prosecutor, or Sanders' counsel, in a way that might concern the State. Following voir dire, the State and Sanders exercised their allotted peremptory challenges, each striking five potential jurors from the panel. The State struck Ms. R., Mr. S., Mr. O., Ms. S., and Mr. F. Out of the presence of the jury, Sanders challenged the State's striking of Ms. R. and Mr. S., alleging they were struck because they are African-American. When the court asked the prosecutor why she struck Ms. R. and Mr. S., the prosecutor responded:

> Both of those individuals expressed having prior bad experiences with the police, and although in the end they indicated they could be fair, they were quite hesitant and seemed to express feelings based upon their personal experiences of not trusting law enforcement and maybe looking more skeptically at law enforcement testimony than other witnesses, and that is the reason they were struck, which is also consistent with Mr. [O.]

The court accepted the State's explanation as "race neutral" and not "camouflage…. [T]he jurors came forward and acknowledged that they had experiences that caused them to be feeling that the police had ill-treated them, and that is not a sentiment exclusively held by blacks. There are plenty of white people [who feel that way, such as] Mr. [O.]" The court continued:

> In the end, I felt that they were qualified to make it to this phase in spite of their—Mr. [O.] for sure at an earlier

9

point when I deferred it or initially denied it, the answers he had given clearly could have led to his exclusion from the jury, but I'm a big believer in trying to keep people on if at all possible. I don't want them to go off because they might not be fair. I want them to really think about it. In the end, all three of them indicated a willingness to be fair. That doesn't mean that the district attorney has to accept that that they would be ideal jurors for the State.

¶4      The circuit court found the prosecutor's reason for striking Ms. R. and Mr. S. to be "legitimate," adding:

> [I]f I look at this whole panel, I don't think the district attorney is off the wall in selecting these two as to be among their five people they strike. I don't think there is any reason for me to conclude it's because they are black. It may be that derivatively they have had bad experiences because they are black, but they are not being excluded now because they are black ….

The court denied Sanders' challenge to the prosecutor's use of peremptory strikes.

¶5      During the trial, the State called five witnesses—three law enforcement officers, a confidential informant who worked with the law enforcement officers, and a codefendant of Sanders who testified to Sanders selling him heroin on two occasions. Sanders presented no witnesses in his defense. The jury returned a verdict of guilty on both counts against Sanders, and the court later sentenced him. Sanders appeals.

## *Discussion*

¶6      Sanders asserts the Equal Protection Clause was violated because the State acted with discriminatory intent in striking the only two African-American potential jurors. He claims the circuit court erred in seeing it otherwise and in declining to keep those two potential jurors on his jury despite the State's exercise of its peremptory challenges.

¶7     To succeed with his challenge, Sanders needed to demonstrate that the prosecutor had "racially discriminatory intent or purpose" behind her decision to strike these two potential jurors. *See State v. Lamon*, 2003 WI 78, ¶34, 262 Wis. 2d 747, 664 N.W.2d 607.  A three-step process is involved with such a challenge. *See Batson v. Kentucky*, 476 U.S. 79 (1986); *Lamon*, 262 Wis. 2d 747, ¶¶22, 27.  First, a defendant must make a prima facie showing "that the prosecutor has exercised peremptory challenges on the basis of race." *Hernandez v. New York*, 500 U.S. 352, 358 (1991).  Second, if the showing is made, the prosecutor must then provide a race-neutral explanation for why he/she struck the potential juror(s). *Id.* at 358-59.  Lastly, if the prosecutor provides such an explanation, the circuit court must then "determine whether the defendant has carried his burden of proving purposeful discrimination." *Id.* at 359.  "[D]iscriminatory intent is a question of historical fact, and the clearly erroneous standard of review applies at each step." *Lamon*, 262 Wis. 2d 747, ¶45.  Because the circuit court "is in the best position to determine the credibility of the state's race-neutral explanations," we give "great deference" to the court's ruling as to whether the prosecutor had racially discriminatory intent or purpose in exercising his/her peremptory challenges. *Id.*, ¶¶41-42.

¶8     Because the parties focus on the third step of the analysis, so will we.  The third step

> requires that when the prosecutor offers a race-neutral explanation, the circuit court has the duty to weigh the credibility of the testimony and determine whether purposeful discrimination has been established.  As part of this third step, a defendant may show that the reasons proffered by the State are pretexts for racial discrimination.  The defendant then has the ultimate burden of persuading the court that the prosecutor purposefully discriminated or that the prosecutor's explanations were a pretext for intentional discrimination.  Therefore, it is at this step that the issue of persuasiveness and plausibility of the

11

prosecutor's reasons for the strike become relevant, and "implausible or fantastic justifications may [ ] be found to be pretexts for purposeful discrimination."

*Id.*, ¶32 (citations omitted; brackets in original).

¶9 The prosecutor indicated to the circuit court that she struck Ms. R. and Mr. S., as well as non-African-American Mr. O., because they all "expressed having prior bad experiences with the police … and seemed to express feelings based upon their personal experiences of not trusting law enforcement and maybe looking more skeptically at law enforcement testimony than other witnesses." Sanders' counsel responded that Mr. S. "never expressed any hesitancy [in indicating he could be fair] and, you know, it's the very idea of why we need the black people on the jury, because they are the ones who are harassed, you know, by the police … and … they represent a cross-section of society." The court found the prosecutor's explanation for striking Ms. R. and Mr. S. to be race-neutral, credible, and appropriate and ultimately determined there was no reason to conclude the prosecutor struck the two African-American potential jurors "because they are black." The court added that it saw no evidence the prosecutor "purposefully exclude[d]" Ms. R. or Mr. S. "on the basis of the color of their skin."

¶10 On appeal, Sanders asserts: "[W]hat the State did not tell the court below is that both of the black jurors' reason for their bad experiences with police was they had been pulled over for the non-existent crime of Driving While

Black."[1]  He develops no argument and provides no legal support related to why the specific reason(s) a potential juror may be biased against a party's case is of consequence to the constitutional analysis.   Instead, Sanders conclusorily challenges the State's expressed reason for striking the two African-American jurors:

> [S]ince it is only black people who are stopped for Driving While Black, the State's reason for striking these black jurors was not race-neutral.  If black persons who have been stopped for Driving While Black, *i.e.* have been discriminated against by police, are therefore ineligible to serve on juries, then the State has based discrimination upon discrimination.  Thus, the State's reason for striking the black jurors was not race neutral and the [circuit] court['s] decision to sustain the strikes was clearly erroneous.

¶11     Sanders fails to persuade.   Non-African-Americans—such as Mr. O.—certainly can, and do, also develop bias against law enforcement based upon negative personal experiences.  Whether the experiences are motor-vehicle related or not is of no import, what matters is bias toward a party's case.  Each instance of police contact provides an opportunity for a citizen to develop a sense of either appreciation or disdain for the law enforcement officer(s) with whom he/she interacts as well as "law enforcement" more generally.   Similarly, a potential juror, African-American or otherwise, could believe a loved one has been treated "unfairly" by our criminal justice system in a broader sense, such as non-

---

[1] The circuit court would have been aware of the reason Ms. R. and Mr. S. exhibited bias toward law enforcement.  Ms. R. told the court:  "I have an issue with the police.  I have been pulled over for driving in the wrong area, so my perception might be skewed."  Mr. S. told the court his "bad experience with law enforcement" was due to "being racially profiled ….   I have had it happen to me several times where I have just been pulled over without just cause."  To the extent a specific "Driving While Black" argument was not made to the court, it was *Sanders'* responsibility to make such an argument, not the State's.

African-American Ms. S. seemed to express during voir dire with regard to her son. Bias against law enforcement and/or the criminal justice system more generally is a legitimate and very understandable reason for the State, when given the opportunity, to strike a potential juror. *See United States v. Carter*, 111 F.3d 509, 511-14 (7th Cir. 1997) (African-American potential juror's antipolice sentiment provided the prosecutor sufficient reason for striking the potential juror, with the court adding, "*Batson* does not prevent consideration of a potential juror's own admitted prejudices just because the potential juror and the defendant are of the same race."); *Edwards v. Roper*, 688 F.3d 449, 454-56 (8th Cir. 2012) (prosecutor's strike of an African-American potential juror found proper where the potential juror's comments exhibited "some distrust of courts and prosecutors"); *United States v. Brooks*, 2 F.3d 838, 841 (8th Cir. 1993) (African-American potential juror's experience as a victim of police brutality was a race-neutral reason for prosecutor to strike the potential juror "even though the repeated application of the reason might result in the disproportionate removal of black prospective jurors"); *cf. State v. Mendoza*, 227 Wis. 2d 838, 854-56, 596 N.W.2d 736 (1999) (prospective jurors properly struck for cause after exhibiting "residual hostility" and "resentment" toward criminal justice system in relation to their own prior encounter with the system); *State v. Oswald*, 2000 WI App 3, ¶12, 232 Wis. 2d 103, 606 N.W.2d 238 (1999) (potential jurors must be struck for cause if they exhibit "an intractable negative attitude toward the justice system").

¶12 The prosecutor here struck all four of the potential jurors who appeared to harbor some level of bias against law enforcement officers or the criminal justice system more generally—two were African-American, two were not. While each potential juror ultimately indicated he/she could fairly judge the evidence in the case, based upon the totality of the voir dire discussion, we see no

14

error in the circuit court's determination that the prosecutor had a legitimate, race-neutral reason for striking Ms. R. and Mr. S. from the jury and did not act with racially discriminatory intent. That Ms. R. and Mr. S. alleged that their prior experiences with law enforcement may have involved discriminatory intent does not detract from the prosecutor's legitimate, nondiscriminatory concern about potential bias against the State's case in this wholly unrelated proceeding.

¶13     While we recognize that Ms. R. and Mr. S. were the only two African-American members of the jury panel, as our supreme court noted in *Lamon*, the rule "is that the Equal Protection Clause is not violated simply because there is a racially discriminatory or a disparate impact. Proof of racially discriminatory intent or purpose [by the prosecutor] is required to show a violation of the Equal Protection Clause." *Lamon*, 262 Wis. 2d 747, ¶34. Sanders failed to meet his burden to show such proof.[2]

*By the Court.*—Judgment affirmed.

---

[2] Sanders also asserts two other "issues." He claims his "right to confer with counsel during plea negotiations" was violated when the circuit court denied his request for a continuance of the final pretrial conference to allow him additional time to discuss with counsel a recently produced incriminating statement of a codefendant. He also insists the circuit court denied him "basic due process by forcing [him] to choose between his right to counsel and his right to [a] jury trial" when Sanders complained, midtrial, about his counsel's performance, and the court ruminated about the possibility of adjourning the trial if Sanders and the State were both to agree to an adjournment with the trial later proceeding as a court trial. Because Sanders completely fails to develop a legal argument in support of these positions, we do not address them. *See ABKA Ltd. P'ship v. Board of Review*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) ("[We] will not address undeveloped arguments."); *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments" for the parties.).

No.    2018AP1310-CR(D)


¶14    REILLY, P.J. (*dissenting*).

> *"It was long ago settled, and many times reaffirmed, that a conviction rendered by a jury from which Negroes have been intentionally and systematically excluded will not be allowed to stand."*

*McKissick v. State*, 49 Wis. 2d 537, 542, 182 N.W.2d 282 (1971) (emphasis added).

¶15    Malcolm J. Sanders is black.  At his trial, all of the black jurors were struck by the prosecutor despite their assurances that they could fairly hear the evidence.  When the court asked the prosecutor why she struck all the black jurors, she replied that they all had "prior bad experiences with the police," and despite their assurances that they could be fair, she struck them because "they were quite hesitant and seemed to express feelings based upon their personal experiences of not trusting law enforcement and maybe looking more skeptically at law enforcement testimony than other witnesses, and that is the reason they were struck."  Majority, ¶3.  Under the *Batson*[1]/*Lamon*[2] standard of review, the judge was presented with the option of calling the prosecutor a liar or accepting the prosecutor's "race-neutral" reason.  *See Flowers v. Mississippi*, 139 S. Ct. 2228, 2241 (2019) ("The trial judge must determine whether the prosecutor's stated

---

[1]  *Batson v. Kentucky*, 476 U.S. 79 (1986).

[2]  *State v. Lamon*, 2003 WI 78, 262 Wis. 2d 747, 664 N.W.2d 607.

reasons were the actual reasons or instead were a pretext for discrimination.") (citing *Batson v. Kentucky*, 476 U.S. 79, 97-98 (1986)).

¶16 It is a perversion of justice to accept the reasoning that because we have unfairly treated blacks (or any class of people), we can then use our wrongful acts to prevent blacks from serving on juries. Utilizing our unfair treatment of blacks as a valid "race-neutral" reason to keep blacks off juries is itself discrimination. *See Discrimination*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Differential treatment; esp., a failure to treat all persons equally when no reasonable distinction can be found between those favored and those not favored."); *see also Flowers*, 139 S. Ct. at 2240-41 ("[T]he *Batson* Court emphasized that 'the central concern' of the Fourteenth Amendment 'was to put and end to governmental discrimination on account of race.'").

¶17 This is not a failure of the police. This is a failure of the judicial system. Our history of racism against blacks and our recent judicial sanctioning of racial profiling has infected our justice system with a cancer that is now metastasizing into the constitutional right to a jury. *See State v. Wright*, 2019 WI 45, ¶¶32-34, 386 Wis. 2d 495, 926 N.W.2d 157; *State v. Floyd*, 2017 WI 78, ¶¶26-28, 377 Wis. 2d 394, 898 N.W.2d 560; *State v. Brown*, 2019 WI App 34, ¶¶19-21, 388 Wis. 2d 161, 931 N.W.2d 890. The jury is a foundation of our justice system as it removes the government from being the judge of whether one committed a crime. *See, e.g.*, *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975) ("The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge."); *see also Blakely v. Washington*, 542 U.S. 296, 305-06 (2004) (The right of a jury trial "is no mere procedural

2

formality, but a fundamental reservation of power in our constitutional structure."); ***Parsons v. Bedford***, 28 U.S. 433, 446 (1830) ("The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy."). The government is putting itself in the jury room by systematically removing an entire class of citizens from serving on juries.

¶18 "Equal justice under law requires a criminal trial free of racial discrimination in the jury selection process." ***Flowers***, 139 S. Ct. at 2242. The ***Batson/Lamon*** standard of review is an illusion.[3] The "race-neutral" reason offered by the prosecutor is per se discriminatory and requiring our trial judges to call out prosecutors as liars to defeat these easily stated "race-neutral" reasons is unworkable. I respectfully dissent.

---

[3] Justice Thurgood Marshall's concurrence in ***Batson v. Kentucky***, 476 U.S. 79 (1986), highlighted the problem with the standard of review:

> [W]hen a defendant can establish a prima facie case, trial courts face the difficult burden of assessing prosecutors' motives. Any prosecutor can easily assert facially neutral reasons for striking a juror, and trial courts are ill equipped to second-guess those reasons. How is the court to treat a prosecutor's statement that he struck a juror because the juror had a son about the same age as defendant, or seemed "uncommunicative," or "never cracked a smile" and, therefore "did not possess the sensitivities necessary to realistically look at the issues and decide the facts in this case"? If such easily generated explanations are sufficient to discharge the prosecutor's obligation to justify his strikes on nonracial grounds, then the protection erected by the Court today may be illusory.

*Id.* at 105-06 (Marshall, J., concurring) (citations omitted); *see also* ***Lamon***, 262 Wis. 2d 747, ¶¶94-96 (Abrahamson, C.J., dissenting).