**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 21, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2021AP1067-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF29

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

BRADLEY C. BURGESS,

   DEFENDANT-APPELLANT.

APPEAL from judgments of the circuit court for Lafayette County: KARL HANSON, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

¶1    GRAHAM, J.   Bradley Burgess was a passenger in a vehicle that was pulled over by a police officer because it had a defective muffler. During the traffic stop, the officer developed reasonable suspicion that Burgess was obstructing his investigation by providing a false name. The officer eventually searched the

vehicle, and contraband that the police attributed to Burgess was found in the search. Burgess filed a motion to suppress the contraband, which was denied, and Burgess pled no contest to four offenses.

¶2 Burgess appeals his judgments of conviction, arguing that the circuit court should have granted his motion to suppress. On appeal, he does not argue that the arresting officer lacked a valid basis for the initial traffic stop, that the officer lacked a valid basis to search the vehicle, or that there was not reasonable suspicion that a crime was being committed when Burgess gave the officer a false name. Burgess's argument is that the arresting officer unlawfully prolonged the duration of the stop, contrary to ***Rodriguez v. U.S.***, 575 U.S. 348 (2015), first by asking the passengers for their names, dates of birth, and telephone numbers and running records checks on the passengers, and second by asking the driver questions unrelated to the defective muffler. We do not address Burgess's second claim of error because he does not develop an argument to support it. As for Burgess's argument related to the passenger identification and records checks, we conclude that Wisconsin law already recognizes such checks to be ordinary inquiries that are incident to a traffic stop. Therefore, these checks did not unconstitutionally prolong the stop, and we affirm the judgments of conviction.

## BACKGROUND

¶3 In the early morning hours of January 24, 2019, Officer Nicholas Mantsch conducted the traffic stop that led to Burgess's arrest. The following summary of undisputed facts is derived from the circuit court's findings of fact and Mantsch's testimony, which the court found to be "clear and credible." It is supplemented by our observations from Mantsch's body camera footage, which was

2

played during the suppression hearing. Our observations are all consistent with the facts found by the circuit court.

¶4 Mantsch was on patrol when he observed an unoccupied vehicle he did not recognize that was legally parked outside the residence of a person he believed to use illegal drugs. Mantsch ran a license plate check and determined that the vehicle was registered to a person we identify throughout this opinion as "the driver." Mantsch learned that the driver had a valid driver's license and no active warrants, and that he was under supervision with the state department of corrections.

¶5 Shortly thereafter, Mantsch observed four individuals enter the parked vehicle, although he did not see where they came from. When the vehicle began moving, Mantsch could hear that it had a defective muffler. Mantsch suspected drug activity, and he contacted police dispatch to ask if a K-9 unit was available to respond to a traffic stop.

¶6 Mantsch followed the vehicle. Shortly after 2:00 a.m., he activated the emergency lights on his squad car, and the vehicle pulled to the side of the road. In his initial report of the incident, Mantsch stated that he stopped the vehicle to address its defective muffler. Mantsch's subsequent interactions with its occupants were recorded on his body camera, and we refer to the timestamps from the body camera footage below.

¶7 At 00:00:22, Mantsch approached the vehicle on foot. The driver handed Mantsch his license, and Mantsch engaged him in a conversation about the muffler. Mantsch told the driver that he had stopped the vehicle because the muffler was loud, and the driver agreed it was loud. Mantsch asked if the driver was aware of that, and the driver said he was. Mantsch asked if the driver planned on getting the muffler taken care of, and the driver said he did.

¶8　At 00:00:52, Mantsch turned to the passengers and asked, "You guys got IDs on you as well?" The passengers communicated that they did not have identification, and Mantsch asked each passenger for their name, date of birth, and phone number. One of the passengers declined to answer, but the other two, including Burgess, answered Mantsch's questions. Burgess identified himself as "Cody R. Kitsemble" and provided a date of birth.

¶9　At 00:03:05, Mantsch turned back to the driver and asked the following questions (followed by the driver's responses) about the group's activities that night: "Where are you guys coming from tonight?" ("Over by the fair[grounds]."); "What's over by the fair[grounds]?" ("We dropped off a buddy."); "Who's your buddy?" ("Tim"); and "Do you know, was it on Louisa Street over there?" ("I don't know street names."). Mantsch looked at the driver's license, confirmed that he still lived in Platteville, and then jotted down his phone number. Mantsch resumed his questioning of the driver as follows: "Where were you guys at before where you were dropping him off?" ("Madison"); "What's in Madison?" (his buddy was "stuck at a bar."); and "Just went to pick him up and gave him a ride home?" ("Yep.").

¶10　At 00:04:02, Mantsch told the occupants of the vehicle to "hang tight," and by 00:04:12, he was back in his squad car running records checks, starting with the driver. Another officer arrived and, as Mantsch was running the records checks, he told the second officer that he was "seeing some signs of meth use on the back seat left passenger," who was later identified as Burgess.[1]

---

[1] The State does not argue that the facts Mantsch was aware of amounted to reasonable suspicion that a drug crime had been committed.

¶11      At 00:06:17, Mantsch ran a records check on the name that Burgess had provided, and at 00:06:52, Mantsch determined that "[Burgess] gave … the wrong date of birth." Mantsch returned to the vehicle at 00:07:15 and asked Burgess to step out of the vehicle. Shortly thereafter, Burgess acknowledged that he had given a false name because he was worried he had "warrants." At that point, Burgess gave a different name and date of birth. It is undisputed that, from that point onward, Mantsch could detain Burgess based on reasonable suspicion that he had committed the crime of obstructing an officer's investigation by providing a false name.

¶12      Mantsch's investigation continued and, eventually, he removed the occupants of the vehicle and searched it.[2] During the search, the officers discovered drugs, drug paraphernalia, and other contraband.

¶13      Burgess was charged with two counts of identity theft. He was also charged with possession with intent to distribute THC, two counts of possession of drug paraphernalia, and carrying a concealed knife, all as party to a crime. He filed a motion to suppress all evidence obtained in the traffic stop arguing, among other things, that Mantsch had seized the driver and passengers "beyond the time reasonably required to complete the traffic stop."

---

[2] According to the State, Mantsch properly searched the vehicle pursuant to WIS. STAT. § 973.09(1d) (2019-20). A search pursuant to that statute, commonly referred to as an "Act 79 search," *see State v. Anderson*, 2019 WI 97, ¶2 & n.2, 389 Wis. 2d 106, 935 N.W.2d 285, allows law enforcement officers to search property under a probationer's control "if the officer reasonably suspects that the [probationer] is committing, is about to commit, or has committed a crime" or a violation of a condition of probation. During the circuit court proceedings, Burgess argued that the requirements of § 973.09(1d) were not met, but Burgess has not renewed that argument on appeal.

All references to the Wisconsin Statutes are to the 2019-20 version.

¶14 Following the suppression hearing, the circuit court denied Burgess's motion to suppress. In its oral ruling, the court cited *State v. Betow*, 226 Wis. 2d 90, 93, 593 N.W.2d 499 (Ct. App. 1999), and *U.S. v. Johnson*, 58 F.3d 356 (8th Cir. 1995), for the proposition that, "[a]s part of a traffic stop, an officer may ask for the identification of the driver, ask for the driver's purpose and his/her destination," and "that is what Officer Mantsch did in this case." The court then cited *State v. Gammons*, 2001 WI App 36, ¶24, 241 Wis. 2d 296, 625 N.W.2d 623, for the proposition that an officer can ask for "the identification of the other individuals in the vehicle." The court stated that, in its view, the discussion in *Gammons* about passenger information checks is "harmonious" with the United States Supreme Court's guidance in *Rodriguez*, 575 U.S. 348. Accordingly, the circuit court concluded that Mantsch did not unlawfully prolong the stop beyond the time needed to conduct its mission by asking the driver about the group's activities that night or by conducting passenger identification and records checks—that is, it was "clear to [the court] that that was all done in the initial part of [Mantsch's] investigation and detention of the vehicle and the driver, with regard to the defective muffler."

¶15 Additionally, the circuit court determined that, by the time Burgess gave an alternative name and date of birth, a "second investigation" had begun. At that point, the court concluded, Mantsch had reasonable suspicion that Burgess was

6

committing the crime of obstruction, and that reasonable suspicion justified continued detention.[3]

¶16    Burgess filed a motion for reconsideration, which focused on the passenger identification and records checks.  He argued that *Rodriguez* had fundamentally changed what officers are allowed to do during a traffic stop without unlawfully prolonging its duration, and that, following *Rodriguez*, *Gammons* is no longer a correct statement of law.  He argued that Mantsch's "questioning of the passengers is *not* one of the *Rodriguez* Court's narrowly defined 'ordinary inquiries incident to the traffic stop,'" and that instead, the questioning of the passengers "measurably" and "unlawfully" extended the duration of the stop beyond its mission.  Burgess did not cite or discuss *Betow* or *Johnson* in his motion for reconsideration and did not specifically argue that any questions Mantsch posed to the driver unlawfully extended the duration of the stop.

¶17    The circuit court determined that "police questions about passenger identification and verification of that information" are "ordinary inquiries," as that term is used in *Rodriguez*, 575 U.S. at 355, and it denied the motion for

---

[3] The circuit court later explained its reasonable suspicion determination as follows: Mantsch developed reasonable suspicion "that a crime was afoot based upon the time of day, location of the unfamiliar vehicle and its occupants near a known drug-user's home, and, most critically, based upon information developed after Burgess provided a false identity."  As it explained, "[i]f Burgess had not provided the false identity to Mantsch, all of the other factors viewed in the totality of the circumstances … would not have developed into reasonable suspicion sufficient to extend the traffic stop."  However, "[o]nce Mantsch determined that the false identity provided by Burgess was not valid, he had reasonable suspicion to investigate further."  Neither party challenges this determination on appeal.

reconsideration. Burgess pled no contest to four offenses and now appeals his judgments of conviction.[4]

## DISCUSSION

¶18　The review of an order granting or denying a suppression motion presents an issue of constitutional fact. *State v. Johnson*, 2013 WI App 140, ¶6, 352 Wis. 2d 98, 841 N.W.2d 302. We uphold the circuit court's findings of fact unless they are clearly erroneous, and we independently review the application of constitutional principles to those facts. *Id.*

¶19　"The Fourth Amendment to the United States Constitution prohibits unreasonable seizures." *State v. Wright*, 2019 WI 45, ¶23, 386 Wis. 2d 495, 926 N.W.2d 157. The Wisconsin Constitution provides similar protections that are usually interpreted "coextensively with the United States Supreme Court's interpretation of the Fourth Amendment." *State v. Floyd*, 2017 WI 78, ¶19, 377 Wis. 2d 394, 898 N.W.2d 560. These prohibitions and protections apply to traffic stops, which are considered seizures for constitutional purposes. *Wright*, 386 Wis. 2d 495, ¶23. As a passenger in a seized vehicle, Burgess was likewise seized in the traffic stop, and he has standing to challenge the constitutionality of its duration. *State v. Harris*, 206 Wis. 2d 243, 255-56, 557 N.W.2d 245 (1996); *State v. Malone*, 2004 WI 108, ¶¶27-28, 274 Wis. 2d 540, 683 N.W.2d 1.

¶20　It is undisputed that Officer Mantsch had a valid basis to stop the vehicle due to its defective muffler; therefore, the traffic stop was lawful at its

---

[4] WISCONSIN STAT. § 971.31(10) provides that "[a]n order denying a motion to suppress evidence … may be reviewed upon appeal from a final judgment or order notwithstanding the fact that the judgment or order was entered upon a plea of guilty or no contest …."

inception.[5] In such cases, "[a]uthority for the seizure … ends when tasks tied to the traffic infraction [that justified the stop] are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354. A routine traffic stop "'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission'" of issuing a ticket for the violation. *Id.* at 354-55 (quoted source omitted). Additionally, "[b]eyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Id.* at 355 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). "Typically such [ordinary] inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.*

¶21 With these principles in mind, we turn to Burgess's argument on appeal. Burgess contends that, because the traffic stop was justified based on an equipment violation, the stop in this case should have ended after 54 seconds. According to Burgess, the mission of the stop was complete at that point because Mantsch had finished questioning the driver about the muffler and had determined that he would issue a verbal warning. Burgess acknowledges that, approximately seven minutes into the stop, Mantsch developed reasonable suspicion that Burgess was committing the crime of obstruction and, from that point onward, his continued

---

[5] It is apparent from the transcript that Mantsch's attention was drawn to the vehicle due to a suspicion that its occupants were involved in drug crimes. Burgess does not challenge the stop as pretextual. Courts have explained that the constitutionality of a traffic stop does not depend on the subjective motivations of the officer, and that "pretextual traffic stops—stops designed to investigate violations not related to the observed violation—are not per se unreasonable under the Fourth Amendment." *See, e.g.*, *State v. Houghton*, 2015 WI 79, ¶25, 364 Wis. 2d 234, 868 N.W.2d 143 (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

detention would have been lawful. However, he contends that Mantsch unlawfully prolonged the duration of the stop between the 54-second mark and the seven-minute mark by (1) asking for the names, dates of birth, and phone numbers of the passengers and conducting records checks based on that information, and (2) asking the driver questions that were unrelated to the muffler and were instead about the group's activities that night.

¶22     We do not address Burgess's assertions about Mantsch's questioning of the driver because Burgess has not developed any argument on that point with citation to and discussion of pertinent authority. As discussed above, the circuit court cited *Betow*, 226 Wis. 2d 90, and *Johnson*, 58 F.3d 356, for the proposition that an officer may inquire into a driver's purpose and destination "[a]s part of a traffic stop." Burgess has not cited *Betow* or *Johnson*—not in his motion for reconsideration nor his appellate briefing—and he has not developed any argument that the court's analysis or conclusion on this issue is wrong. We observe that the case law in this area is nuanced,[6] and we decline to address this issue without the benefit of a developed argument from the party that purports to challenge the circuit court's determination on appeal. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (providing that an appellate court may "decline to review issues inadequately briefed").

_____

[6] *See State v. Malone*, 2004 WI 108, ¶¶33-34, 274 Wis. 2d 540, 683 N.W.2d 1 (declining to adopt a bright line rule about the permissible scope of questioning of drivers and passengers concerning their "destination and purpose" during a routine traffic stop); 4 WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.3(c) at 538 (6th ed. 2020) (addressing police questioning of the occupants of a vehicle about their "travel plans" and "destination and purpose" during a lawful traffic stop). *See also Malone*, 274 Wis. 2d 540, ¶¶27-28 (concluding that, although a passenger has standing to challenge the nature of questions posed to that passenger and the total duration of the stop, the passenger does not have standing to challenge the "nature of questions" posed to the driver or other occupants).

¶23    We turn to the argument that Burgess has developed in the circuit court and on appeal—that Mantsch unlawfully prolonged the stop by asking for the passengers' names, dates of birth, and telephone numbers and by running records checks based on that information.  As a preliminary matter, we agree with Burgess that Mantsch's request for the passengers' identification had nothing to do with his investigation of the defective muffler because the passengers were not driving the vehicle.  Burgess contends that, because the passenger information was not pertinent to Mantsch's investigation into an equipment violation, he lacked authority to prolong the stop by requesting that information and running records checks on the passengers.  The State counters that Wisconsin courts have recognized that passenger records checks are part of the mission of any traffic stop, and therefore, that they are "ordinary inquiries incident to the traffic stop," as that term is used in *Rodriguez*.

¶24    The State cites two cases, *State v. Griffith*, 2000 WI 72, 236 Wis. 2d 48, 613 N.W.2d 72, and *Gammons*, 241 Wis. 2d 296, for the proposition that Wisconsin treats passenger identification checks as "ordinary inquiries."  Both cases predate *Rodriguez*.  They also predate *Caballes*, 543 U.S. 405, in which the United States Supreme Court first used the term "ordinary inquiries" in the context of a traffic stop.  However, *Griffith* and *Gammons* do not predate the broader proposition that certain checks can be made incident to a lawful traffic stop without unlawfully prolonging its duration.  *See, e.g.*, *U.S. v. Jones*, 269 F.3d 919, 924-25 (8th Cir. 2001).

¶25    In *Griffith*, the arresting officer conducted a traffic stop after he recognized the driver as someone who did not have a valid driver's license.  *Griffith*, 236 Wis. 2d 48, ¶9.  During the stop, the officer asked Griffith, a passenger, for his name, date of birth, and age, and Griffith gave a false name.  *Id.*, ¶13.  The officer

knew that Griffith was lying about his identity and directed a fellow officer to arrest him for obstruction. *Id.* Officers handcuffed Griffith, who then fled. *Id.*, ¶¶13-14. After Griffith was apprehended, he was charged with and convicted of obstruction and escape from custody after a lawful arrest. *Id.*, ¶¶16, 18. During postconviction proceedings, Griffith argued that his attorney had been ineffective for failing to challenge the lawfulness of the arrest. *Id.*, ¶4. Specifically, he argued that he could not be arrested for obstruction because the officer had no lawful authority to ask Griffith, a passenger, for his name and date of birth. Griffith acknowledged that the officer could ask him about his identity during a consensual encounter on the street, but Griffith argued that the same rule did not apply during the traffic stop because he had been seized in the stop and would have felt compelled to answer. *Id.*, ¶¶39-40.

¶26 Our supreme court determined that, "when a passenger has been seized pursuant to a lawful traffic stop, the seizure does not become unreasonable under the Fourth Amendment … simply because an officer asks the passenger for identification during the stop." *Id.*, ¶65. The court further explained that "[p]assengers are free to decline to answer such questions, and refusal to answer will not justify prosecution nor give rise to any reasonable suspicion of wrongdoing. However, if a passenger chooses to answer but gives the officer false information, the passenger can be charged with obstructing an officer …." *Id.*, ¶65.

¶27 The *Griffith* court did not address whether the officer could conduct a records check of passenger information, nor whether such a check extended the stop beyond the time necessary to fulfill its purpose, because no such records check occurred in that case. Accordingly, *Griffith* does not squarely address the question posed in this case.

12

¶28 However, in *Gammons*, which this court decided the following year, we stated that our supreme court had "explained" in *Griffith* that passenger records checks can be performed as part of a traffic stop, and that no further justification for the passenger checks is required. *Gammons*, 241 Wis. 2d 296, ¶¶11-13. In that case, Gammons was a passenger in a vehicle that was stopped because it did not have a rear license plate. *Id.*, ¶2. The officer noticed a temporary registration sticker as he approached the vehicle, but he nevertheless proceeded to ask its occupants for identification. *Id.* The officer then ran a driver's license check on the driver and warrant checks on the passengers, *id.*, and he eventually searched the vehicle, finding drugs. *Id.*, ¶4. Gammons argued that the officer unlawfully extended the stop by, among other things, asking questions about Gammons' identification. *Id.*, ¶¶1, 10.

¶29 Although we ultimately concluded that the evidence obtained in the traffic stop should be suppressed, *id.*, ¶24, our conclusion was not based on the officer's request for identification and warrant checks of the passengers. On those topics, we unequivocally stated that "such questions and actions are reasonably related in scope to the purpose of the traffic stop, and no further justification is required." *Id.*, ¶13. We explained our reasoning as follows:

> During an investigative detention, whether the intrusion is reasonable depends on whether the police conduct is reasonably related to the circumstances justifying the initial police interference. An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. The scope of the detention must be carefully tailored to its underlying justification. The State has the burden to show that any seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope.
>
> The supreme court has concluded that "when a passenger has been seized pursuant to a lawful traffic stop, the seizure does not become unreasonable simply because an

13

> officer asks the passenger for identification during the stop." *Griffith*, 236 Wis. 2d 48, ¶65. In *Griffith*, the court identified several reasons why a police officer may need to investigate the identity of passengers during the course of a traffic stop. *Id.*, ¶¶45-48. For example, police may need to determine whether anyone other than the driver in the vehicle is licensed to drive, or they may need to identify potential witnesses to unlawful conduct. *Id.*, ¶¶47-48.
>
> [The arresting officer] did not violate Gammons' Fourth Amendment rights by requesting his driver's license and running a check on him. As the *Griffith* court explained, such questions and actions are reasonably related in scope to the purpose of a traffic stop, and no further justification is required. *Id.*, ¶45.

*Id.*, ¶¶11-13 (some internal quotation marks and quoted sources omitted).

¶30 *Gammons* squarely addresses the issues presented in this case. Although the *Gammons* opinion was issued before the United States Supreme Court first started using the term "ordinary inquiry," its analysis is consistent with the Supreme Court's explanation and description of what constitutes an ordinary inquiry. That is, the reasoning in *Gammons*—that passenger checks are "reasonably related in scope to the purpose of a traffic stop," *id.*, ¶13—is another way of saying that they are "ordinary inquiries incident to [a traffic] stop," as that phrase is used in *Caballes*, 543 U.S. at 408, and *Rodriguez*, 575 U.S. at 355.

¶31 Burgess does not address *Gammons* until his reply brief and, even then, his argument does not engage with the above-quoted language from that case. Burgess may mean to argue that *Rodriguez* effectively overruled *Gammons*, but to the extent he intends to make that argument, it is unpersuasive.

¶32 In *Rodriguez*, the arresting officer stopped Rodriguez's vehicle for a traffic infraction and then gathered Rodriguez's license, registration, and proof of insurance. *Id.* at 351. After running a records check on Rodriguez, the officer

14

returned to the vehicle, asked the passenger for his license, and then ran a records check on the passenger. *Id.* The officer issued a written warning and returned all documents to the driver and passenger, but continued to hold them until a drug-sniffing dog arrived and detected the presence of drugs. *Id.* at 351-52. The *Rodriguez* Court determined that the officer had unlawfully prolonged the duration of the stop beyond its mission to conduct the dog sniff. *Id.* at 355-57.

¶33 Although the facts in *Rodriguez* included a passenger records check, the *Rodriguez* Court did not comment one way or another on whether the passenger records check had unlawfully prolonged the stop. That is, the Court neither expressly approved nor expressly disapproved of the passenger records check, and it did not say whether the passenger records check could be considered an ordinary inquiry incident to a traffic stop. Because *Rodriguez* was silent on this issue, we cannot conclude that it effectively overruled *Gammons*. To the extent that Burgess is arguing that *Gammons* should be overruled, that is an issue that should be directed to our supreme court. *See Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997) (the court of appeals cannot overrule its own precedent).

¶34 Burgess also argues that *Gammons* is distinguishable because the passenger identification and records check in *Gammons* "occurred before the investigation related to the traffic stop was complete" and "at the same time the officer conducted a records check of the driver and related to officer safety." We question the accuracy of portions of Burgess's recitation of facts from *Gammons*, but his argument fails for another reason. As we now explain, in *Smith*, our supreme court rejected an analogous argument, concluding that an officer may complete ordinary inquiries even after addressing the specific traffic infraction that justified the stop because the mission of the stop is not concluded until the ordinary inquiries are complete. *State v. Smith*, 2018 WI 2, ¶21, 379 Wis. 2d 86, 905 N.W.2d 353.

15

¶35 In *Smith*, the arresting officer lawfully stopped a vehicle that he knew to be owned by a person with a suspended driver's license. *Id.*, ¶4. Upon approaching the vehicle, the officer immediately realized that the driver, Smith, was not the person whose license was suspended. *Id.* Therefore, the reasonable suspicion that had originally justified the stop dissipated as soon as the officer approached the vehicle. *Id.*, ¶14. The officer nevertheless continued to detain Smith to check his license and, during the exchange that followed, the officer developed probable cause to arrest Smith for intoxicated driving. *Id.*, ¶¶4-6. Smith argued that the officer unlawfully prolonged the seizure to ask for his license, but the court disagreed. *Id.*, ¶11. Citing *Rodriguez*, 575 U.S. at 355, the *Smith* court stated that "[t]he mission of a traffic stop includes 'determining whether to issue a traffic ticket' and the ordinary inquiries incident to the stop." *Smith*, 379 Wis. 2d 86, ¶10. Therefore, the court determined, the officer was allowed to finish checking Smith's license—even though the officer no longer had reasonable suspicion to seize him— because checking a driver's license is an ordinary inquiry that is "part of the original mission" of a lawful stop. *Id.*, ¶2; *see also id.*, ¶¶10, 11, 21.[7]

¶36 Applying these principles here, we conclude that, because Wisconsin recognizes passenger records checks to be ordinary inquiries, it does not matter

---

[7] The *Smith* court distinguished between "ordinary inquiries," which are "part of" the mission of a traffic stop, and "unrelated inquiries," which are not. *State v. Smith*, 2018 WI 2, ¶10 n.9, 379 Wis. 2d 86, 905 N.W.2d 353. Officers may engage in unrelated inquiries during the course of a traffic stop—but, unless reasonable suspicion develops to support such inquiries, they cannot prolong the duration of the stop beyond the time that it reasonably should take to complete the mission. *Rodriguez v. U.S.*, 575 U.S. 348, 354 (2015); *see also id.* at 356 ("On-scene investigation into other crimes" are "unrelated inquiries" which impermissibly "detour" from the mission of the stop.). On the contrary, "[a]n expansion in the scope of the [initial] inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion." *See State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124.

whether Officer Mantsch's investigation of the muffler was complete before he asked the passengers for identification and ran passenger records checks. This court established in *Gammons* that passenger checks are "reasonably related in scope to the purpose of a traffic stop," *Gammons*, 241 Wis. 2d 296, ¶13, and we are not empowered to overrule our prior decisions. Based on *Smith*, these checks were therefore part of the mission of the stop and did not unlawfully prolong its duration.[8]

## CONCLUSION

¶37    For all of these reasons, we affirm the judgments of conviction.

*By the Court.*—Judgments affirmed.

Not recommended for publication in the official reports.

---

[8] Because we conclude that Wisconsin law recognizes the passenger identification and records checks conducted by Mantsch as ordinary inquiries, we need not address the State's alternative argument that the checks constituted an unrelated investigation that did not measurably extend the stop.