COURT OF APPEALS
DECISION
DATED AND FILED

September 30, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1159-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF4

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JESSICA RAE HOEY,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Lafayette County: DUANE M. JORGENSON, Judge. *Affirmed*.

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jessica Hoey appeals a judgment of conviction. The issue in this appeal is whether the circuit court erred in denying her suppression motion. We conclude that it did not and, therefore, we affirm.

¶2 Hoey was charged with crimes related to possession of a controlled substance. The circuit court held an evidentiary hearing on her suppression motion and denied the motion. Hoey then pled no contest and appeals under WIS. STAT. § 971.31(10) (2019-20).[1]

¶3 Hoey's motion sought suppression of evidence on the ground that she consented to a search at a time when the traffic stop of the vehicle she was driving had been illegally extended. The State had the burden to prove voluntary consent by clear and convincing evidence. *State v. Phillips*, 218 Wis. 2d 180, 197, 577 N.W.2d 794 (1998). After taking testimony, the circuit court concluded that the traffic stop was over at the time Hoey consented to the search.

¶4 The parties agree on the general legal framework. Consent to search is not valid if the person was illegally seized at the time. *State v. Jones*, 2005 WI App 26, ¶9, 278 Wis. 2d 774, 693 N.W.2d 104. The person was illegally seized if the officer extended the traffic stop beyond completion of its original purpose. *State v. Wright*, 2019 WI 45, ¶23, 386 Wis. 2d 495, 926 N.W.2d 157. However, if the traffic stop seizure was over at the time the officer asked for consent, the person was not illegally seized at that point, and the consent was valid. *State v. Williams*, 2002 WI 94, ¶35, 255 Wis. 2d 1, 646 N.W.2d 834.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶5      As argued in this appeal, the parties appear to agree that, when the officer asked for consent, he had already completed the purpose of the traffic stop. They also appear to agree that the officer did not have reasonable suspicion or probable cause to continue to detain Hoey for some other offense. Accordingly, their focus is on whether the traffic stop seizure was over at the time the officer asked for consent to search.

¶6      The test for determining whether a person is seized is whether a reasonable person would have believed that he or she was not free to leave or, if the person was not free to leave due to circumstances unrelated to the presence of the officer, whether the person would feel free to decline the officer's requests or otherwise terminate the encounter. *Williams*, 255 Wis. 2d 1, ¶¶22, 35. Whether the person was seized is an issue we review de novo after reviewing whether findings of historical fact are clearly erroneous. *Id.*, ¶17. There are no disputes of historical fact in this appeal.

¶7      In *Williams*, the officer told the driver to "get on your way" and then took a couple of steps back towards his patrol car. *Id.*, ¶11. The officer then called the defendant's name and asked a series of questions culminating in a request to search. *Id.*, ¶12. The court held that a reasonable person would have believed he was free to leave after the officer told the driver he could be on his way and briefly turned away. *Id.*, ¶¶26-29. That conclusion was not altered by surrounding circumstances such as the fact that the request followed the end of a traffic stop, the officer's tone, the presence of another officer, or continued activation of emergency lights. *Id.*, ¶¶30-34.

¶8      This court later read *Williams* as requiring "some verbal or physical demonstration by the officer, or some other equivalent facts, which clearly convey

to the person that the traffic matter is concluded and that the person should be on his or her way." *Jones*, 278 Wis. 2d 774, ¶17. In *Jones*, we held that the seizure had not concluded, due to the lack of a "significant demarcation" between the conclusion of the traffic matter and the request to search. *Id.*, ¶18.

¶9 Hoey argues that, in her case, the officer failed to provide a sufficient demarcation between the traffic stop seizure and the request for consent to search. We disagree with this argument because we are unable to see a meaningful difference between the officer's actions that were approved in *Williams* and the officer's actions with Hoey.

¶10 Hoey acknowledges that, here, the officer told her to have a good night and started to walk away, and then called her name and returned to ask questions that ended with a request to search. Hoey does not attempt to parse a distinction between the conduct of this officer and the officer in *Williams*, and we see none.

¶11 Instead, Hoey asserts that this case is more like the facts in *Jones*, in that the traffic matter and request to search were "seamlessly woven together." However, that argument fails to acknowledge the difference from *Williams* that we relied on in *Jones*. That difference was the officer's failure to "sufficiently communicate permission to leave either by word or action," in contrast to the officer's statement in *Williams* that the driver could be on his way. *Jones*, 278 Wis. 2d 774, ¶¶21-22. As did the court in *Williams*, in *Jones* we regarded such an oral statement as an important part of the analysis.

¶12 Here, we regard the officer telling Hoey to have a good night as the functional equivalent of the officer in *Williams* saying that the driver could be on his way. And, as in *Williams*, the officer followed that statement by briefly

4

stepping away. Therefore, we conclude that here the officer provided a sufficient demarcation.

¶13 Hoey also argues that in her situation a reasonable person would not have believed she was free to leave because of what the officer said, before wishing her good night, about Hoey's car being parked in a private driveway. Because Hoey's license was suspended, she would not be able to move the car herself. She argues that, based on this exchange alone, a reasonable person would not feel free to leave the scene until that person had resolved what the officer had identified as a problem.

¶14 In response, the State acknowledges this argument, but does not directly address the significance of the officer's words about the car in the driveway. Instead, the State argues only that the traffic stop ended after that exchange, with the officer's actions as approved by *Williams*. In other words, the State appears to be taking the position that whatever was said or done before those actions is irrelevant to determining whether a reasonable person would believe she was free to leave.

¶15 The State cites no case law for that proposition, and its stance does not appear consistent with case law using a totality of the circumstances approach. *See, e.g.*, *Williams*, 255 Wis. 2d 1, ¶35. The idea that events before the officer's brief departure are irrelevant is not tenable as a blanket proposition. For example, if the officer expressly said that Hoey could not leave the scene until her car was moved, that would be part of the circumstances relevant to deciding whether a reasonable person would believe she was free to leave or terminate the encounter, even after the officer later said good night and briefly stepped away.

¶16     Although that is not the situation in this case, the officer here did, as Hoey argues, have a discussion with her about her car being in the driveway. As we see it, then, the question is whether that exchange is sufficient to change the legal effect that the officer's statement and brief departure otherwise has under *Williams*. Or, to put it another way, was the officer's conduct, taken as a whole, such that a reasonable person would not believe she was free to leave? The circuit court determined that the officer did not compel Hoey to stay with the car, and we agree that the record supports that determination as we now discuss.

¶17     We first describe that part of the encounter in more detail, relying on the video exhibit from the officer's body camera. When the officer returned to Hoey's car to give her a citation for operating with a suspended license, she was on the phone with a friend obtaining a ride. After the officer gave her the citation and explained it, he walked away to speak with another officer. He then returned to Hoey, and she asked what she should do with her car. He initially responded: "The problem is, you're in somebody's driveway, that is a problem." He suggested that her friend move the car to a legal parking place for the night. This exchange eventually concluded with the officer telling her to have a good night, and then asking for consent to search, as described above.

¶18     We conclude that the discussion about the car in the driveway does not undermine the conclusion that we are compelled to reach under *Williams*. If a reasonable person would have believed he was free to leave in *Williams*, that would still be true in this case, even with the discussion about the car. We reach that conclusion for several reasons.

¶19     First, it is clear that the officer did not make any direct statement to Hoey that she was not permitted to leave the scene while her car was in the

6

driveway. Nor did he make a weaker statement on the subject of leaving, such as that she "should not" leave the scene, or that he would prefer that she not leave the scene.

¶20 Second, it is significant that the topic of the car in the driveway was raised by Hoey herself, not the officer. In that context, the officer's response is most reasonably understood by a person in Hoey's position as an attempt to answer her question, rather than as the officer issuing a directive that she must remain at the scene.

¶21 Third, we address Hoey's focus on the officer's use of the word "problem." In context, the officer's response was not one of informing Hoey that a problem existed, and then telling her that he expected her to solve it. Rather, the officer would be better understood as mentally processing her question, and then agreeing with Hoey's own perception, as implied by her question, that this was a problem that required a solution. This interpretation is supported by the tone of his voice, as well as by the words themselves.

¶22 The officer then told Hoey "what I would do if I was you guys," which was to have her friend legally park the car on the street nearby, and then make an arrangement to return for it the next day. Again, the words and tone were most reasonably understood as an attempt to provide a helpful answer to Hoey's question, and not as commanding any particular course of action.

¶23 For these reasons, we conclude that Hoey's suppression motion was properly denied because she was not illegally seized at the time the officer asked for consent to search, and therefore her consent was valid.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.