## COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 8, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP8-CR**

Cir. Ct. No. **2019CT491**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DANNY THOMAS MCCLAIN, JR.,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: JACK L. DAVILA, Judge. *Affirmed.*

¶1 GEENEN, J.[1] Danny Thomas McClain, Jr., appeals from a judgment convicting him, pursuant to a guilty plea, of operating while intoxicated, as a second offense. McClain argues that police officers impermissibly extended

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

the traffic stop beyond its initial justification without reasonable suspicion that any additional criminal activity was afoot, and that police lacked reasonable suspicion of intoxication to justify field sobriety and preliminary breathalyzer tests. For the following reasons, we affirm.

## BACKGROUND

¶2 At 2:44 a.m., City of Franklin Police Officer Adam Rogge stopped McClain's vehicle after observing that its left taillight was out and that the vehicle was swerving within its lane of travel. As soon Officer Rogge reached the vehicle and spoke with the driver, McClain, he noticed that McClain's eyes were bloodshot and smelled the odor of alcohol emanating from the vehicle. He also noticed the passenger, identified as McClain's girlfriend, crying and cursing, visibly distressed.

¶3 During this initial encounter, Officer Rogge asked questions to ascertain the facts of the situation. McClain explained that they were arguing about text messages McClain had sent to an ex-girlfriend and that his girlfriend tried to grab his phone from him which caused him to swerve.

¶4 Around three minutes into the encounter, Officer Rogge called for backup. He explained to dispatch that he had two individuals arguing in the vehicle and was "trying to figure out what's going on" and wanted to make sure nothing physical took place between McClain and his girlfriend. While waiting for backup to arrive, Officer Rogge discovered that McClain had a prior OWI conviction from several years earlier.

¶5 When backup arrived about seven minutes later, police asked McClain's girlfriend to exit the vehicle, and they were each separately questioned

2

regarding their argument, relationship, and whether any physical altercation had taken place, among other things. Officer Rogge noted that the odor of alcohol persisted after McClain's girlfriend left the vehicle. During this questioning, McClain denied drinking while his girlfriend admitted to drinking heavily earlier in the evening. Both McClain and his girlfriend denied any physical altercation, and their answers generally corroborated one another in relevant respects.

¶6     Officer Rogge then asked McClain to exit his vehicle. After McClain left the vehicle, the odor of alcohol persisted, and Officer Rogge determined that the smell of alcohol was coming from McClain. While escorting McClain to the front of his squad car, Officer Rogge asked McClain if he had any weapons on him, and McClain responded that he might have a knife from work in his pocket. Officer Rogge asked McClain if he could search his jacket, and McClain consented to the search. Officer Rogge searched the pocket indicated by McClain and recovered both a knife and a Suboxone tablet.[2] While Officer Rogge continued to speak with McClain, his partner spent time confirming McClain's prescription for Suboxone.[3] Officer Rogge then opened the passenger door to McClain's vehicle and began searching it without permission. Officer Rogge then asked McClain, mid-search, if McClain had any issue with Officer Rogge verifying that there was nothing else in the vehicle. McClain said he had no issue, so Officer Rogge continued searching the vehicle and found no evidence of open intoxicants or other illegal items.

---

[2] Suboxone is a narcotic that contains Buprenorphine, a schedule III narcotic. WIS. STAT. § 961.18(5m). Under WIS. STAT. § 961.41(3g)(b), possession of Buprenorphine without a prescription is a misdemeanor offense.

[3] Police were able to confirm that McClain possessed a valid prescription for Suboxone, and he was not charged with a crime related to his possession of the Suboxone tablet.

¶7 Upon the completion of the pat down and vehicle search, roughly thirty minutes had elapsed from the beginning of the traffic stop, and Officer Rogge told McClain he would conduct field sobriety tests. Officer Rogge continued to smell the odor of alcohol emanating from McClain as he completed these tests. McClain then admitted that he had consumed two alcoholic drinks earlier in the evening. After conducting field sobriety tests, Officer Rogge administered a preliminary breath test; the result was 0.12, and Officer Rogge arrested McClain.

¶8 McClain moved to suppress, arguing that the stop itself was unlawful, that the stop was unlawfully extended beyond its initial justification, and that Officer Rogge did not have reasonable suspicion of intoxication to request McClain perform field sobriety tests. After the suppression hearing, the circuit court concluded that the initial stop was lawful based on the defective taillight and that there was reasonable suspicion to extend the initial stop to investigate possible domestic violence and OWI. While the circuit court ruled that Officer Rogge's pat down of McClain and the search of McClain's vehicle were unlawful and suppressed evidence resulting from those searches, the circuit court concluded that Officer Rogge had reasonable suspicion to extend the stop to investigate the domestic violence concerns and to investigate his suspicion that McClain was operating a vehicle while intoxicated.

¶9 McClain subsequently pleaded guilty to a charge of operating while intoxicated, as a second offense, and was sentenced to five days in jail for a time served disposition.

¶10 McClain appeals.

**DISCUSSION**

¶11    "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact" which we resolve by engaging in a two part inquiry. *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120 (citation omitted). "First, we review the circuit court's findings of fact, and uphold them unless they are clearly erroneous." *State v. Martin*, 2012 WI 96, ¶28, 343 Wis. 2d 278, 816 N.W.2d 270 (citation omitted). "Second, we review de novo the application of constitutional principles to those facts." *Id.* (citation omitted).

¶12    We begin with a discussion of the relevant constitutional principles. The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect against unreasonable searches and seizures. *State v. Eason*, 2001 WI 98, ¶16, 245 Wis. 2d 206, 629 N.W.2d 625. A traffic stop constitutes a seizure of the vehicle's occupants and must be supported by reasonable suspicion. *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979). "The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." *State v. Post*, 2007 WI 60, ¶13, 301 Wis. 2d 1, 733 N.W.2d 634. "[T]hat is, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant'" the traffic stop. *State v. Houghton*, 2015 WI 79, ¶21, 364 Wis. 2d 234, 868 N.W.2d 143 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Reasonable suspicion is a "low" standard, and "[t]he information necessary to establish reasonable suspicion can be less in both content and reliability than the information needed to establish probable cause." *Eason*, 245 Wis. 2d at ¶19.

¶13    Generally, a routine traffic stop becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation justifying the stop. *Rodriguez v. United States*, 575 U.S. 348, 350 (2015) (explaining that a traffic stop "exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures"). However, if, during the course of the stop, new facts come to the officer's attention that support reasonable suspicion for a different criminal offense, officers can extend a stop to investigate the new leads. *State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124.

¶14    On appeal, the parties do not dispute that the defective taillight provided reasonable suspicion for the initial stop. The issue is whether Officer Rogge lawfully extended the stop, which requires that he had reasonable suspicion to extend the stop due to new facts that came to his attention while investigating the taillight violation.

¶15    McClain contends that the results of the field sobriety and preliminary breathalyzer tests should have been suppressed because police did not have reasonable suspicion of domestic violence or OWI sufficient to justify extending the stop. McClain further contends that, even if there was justification to extend the traffic stop to investigate possible domestic violence and OWI, the pat down and vehicle search unlawfully extended the stop because there was no reasonable suspicion to justify the pat down and there was no probable cause or warrant to justify the vehicle search. Finally, McClain argues that even if the extensions and searches were lawful, Officer Rogge still lacked reasonable suspicion to administer the field sobriety and preliminary breathalyzer tests. We disagree.

¶16 We conclude that, from the moment Officer Rogge approached McClain's vehicle to the moment he arrest<u>ed</u> McClain, the facts available to Officer Rogge justified extending the traffic stop to investigate possible OWI. *See Id.*, ¶36. In determining whether reasonable suspicion for OWI exists, courts have considered, among other factors: (1) an officer's training and experience, (2) prior OWI convictions, (3) the odor of intoxicants inside the vehicle, and (4) an admission to consuming alcohol. *State v. Adell*, 2021 WI App 72, ¶¶19-24, 399 Wis. 2d 399, 966 N.W.2d 115.

¶17 In this case, although it was not the reason for stopping McClain in the first place, Officer Rogge had observed McClain "heavily swerving" within his lane of travel. Officer Rogge testified that such swerving, in his experience, was consistent with either a medical emergency or impairment. As soon as Officer Rogge reached the vehicle and spoke with McClain, he noticed that McClain's eyes were bloodshot, and Officer Rogge smelled the odor of alcohol emanating from the vehicle. At this point, based on Officer Rogge's training and experience with respect to McClain's heavy swerving, the time of day (around 2:44 a.m..), McClain's bloodshot eyes, and the odor of alcohol emanating from the vehicle, we conclude that reasonable suspicion of OWI existed to justify extending the traffic stop. *See id.* ¶¶19-24.

¶18 Moreover, the reasonableness of the suspicion that McClain was operating his vehicle while intoxicated only grew stronger as Officer Rogge's investigation continued. While waiting for backup to arrive, Officer Rogge discovered that McClain had a prior OWI conviction from several years earlier. Additionally, despite McClain's and his girlfriend's assertions that only she had been drinking alcohol that night, Officer Rogge observed that the odor of alcohol persisted in the vehicle even after McClain's girlfriend had exited and was talking

to Officer Rogge's partner. Then, after Officer Rogge asked McClain to exit his vehicle, the odor of alcohol persisted, and Officer Rogge determined that the smell of alcohol was coming from McClain. We have no trouble concluding that these facts and circumstances constituted an unbroken chain of reasonable suspicion that McClain was operating his vehicle while intoxicated, justifying both the extension of the initial stop and the field sobriety and preliminary breathalyzer tests.

¶19 We now turn McClain's arguments as to the vehicle and pat down searches. With respect to the vehicle search, a search that the State concedes was illegal, we agree with the circuit court that the appropriate remedy is to suppress "whatever fruits came from the search of the car" and not all subsequent evidence gathered after (and not resulting from) the illegal search. This is because although the search was unlawful, reasonable suspicion that McClain was operating his vehicle while intoxicated remained, and reasonable suspicion, not probable cause or a warrant to search a vehicle, is required to extend a traffic stop beyond its initial justification. *See Hogan*, 364 Wis. 2d 167, ¶35; *Eason*, 245 Wis. 2d 206, ¶19. Moreover, McClain does not explain how this admittedly illegal vehicle search extended beyond the new mission of investigating a possible OWI, and he does not support with authority his assertion that an illegal search conducted with reasonable suspicion (when probable cause or search warrant was required) taints all subsequently gathered evidence, even evidence that was not discovered as a result of the illegal search. In our view, the circuit court correctly suppressed any evidence gathered as a result of the illegal search and nothing more.

¶20 For identical reasons, we reach the same conclusion with respect to the pat down search. Assuming that the pat down search was unlawful, we agree with the circuit court that the correct remedy is to suppress the evidence resulting from that illegal search. McClain likewise fails to explain why the remedy for the

illegal pat down search should extend beyond the fruits of that search given that reasonable suspicion of OWI existed for the duration of the traffic stop.[4]

¶21 Finally, McClain argues that the reasons given by him and his girlfriend explain why McClain was swerving in his lane and who was responsible for the odor of alcohol, therefore any reasonable suspicion of OWI dissipated and could not justify extending the stop. We reject this argument. "Although officers sometimes will be confronted with behavior that has a possible innocent explanation, a combination of behaviors—all of which may provide the possibility

---

[4] The State argues that the circuit court's conclusion that the pat down search was unlawful was clearly erroneous and should be corrected. Under *State v. Alles*, 106 Wis. 2d 368, 390, 316 N.W.2d 378 (1982), the State need not cross-appeal to obtain review of an adverse ruling if all it seeks is to raise an error that, if corrected, would sustain the judgment.

To the extent reviewing the legality of the pat down search is necessary to sustain the circuit court's order, we conclude that the pat down search was lawful. "Because traffic stops are 'especially fraught with danger to police officers,' the Supreme Court has explained that 'an officer may need to take certain negligibly burdensome precautions in order to complete his [or her] mission safely.'" *State v. Wright*, 2019 WI 45, ¶25, 386 Wis. 2d 495, 926 N.W.2d 157 (citation omitted). In *State v. Floyd*, 2017 WI 78, ¶28, 377 Wis. 2d 394, 898 N.W.2d 560, our supreme court held that a police officer may ask about the presence of weapons during a traffic stop without violating the Fourth Amendment.

Here, Officer Rogge asked McClain if he had any weapons on him, and McClain responded that he might have a knife from work in his pocket. Officer Rogge asked McClain if he could search his jacket, and McClain consented to the search. The search produced both a knife and a Suboxone tablet. Our case law applied to these facts makes clear that Officer Rogge was permitted to ask about the presence of weapons and search McClain's pocket after McClain identified a weapon on his person and consented to the search. *See State v. Brown*, 2020 WI 63, ¶¶27-28, 392 Wis. 2d 454, 945 N.W.2d 584; *Wright*, 386 Wis. 2d 495, ¶¶17, 24-25, 31-33; *Floyd*, 377 Wis. 2d 394, ¶28-30.

of innocent explanation—can give rise to reasonable suspicion." ***Hogan***, 364 Wis. 2d 167, ¶36.[5]

## CONCLUSION

¶22 Accordingly, we conclude that the circuit court correctly denied McClain's motion to suppress the evidence of his field sobriety and preliminary breathalyzer tests.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] We note before concluding that the parties spent significant time briefing whether there existed reasonable suspicion of a domestic violence offense that would justify the extension of the traffic stop. We do not address this argument because we conclude that reasonable suspicion of OWI existed throughout the stop, justifying its extension. *Water Well Solutions Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶33 n.18, 369 Wis. 2d 607, 881 N.W.2d 285 (explaining that we should decide cases "on the narrowest grounds possible").